## BRIZSEE & TORRENCE *vs.* MAYBEE.

In *replevin*, where the defendant has obtained judgment *de retorno*, and sued out a writ of inquiry to have his damages assessed for detention, the measure of damage ordinarily is the *interest* upon the value of the goods when taken, from the time of the taking until the *quarto die post* succeeding the execution of the writ of inquiry.

The cost of manufacturing a raw article for and transporting it to market may properly be inquired into, to ascertain the value of the article at the time and place of its taking; but that once being fixed, the measure of damages is the legal interest upon such value.

*It seems*, however, that where a writ of replevin is sued out *fraudulently*, or *without color of right*, that a jury would be warranted in giving exemplary damages, as in a case for a wilful and malicious trespass.

DAMAGES in replevin. The defendant in an action of *re-plevin* brought by the plaintiffs for about 200 saw-logs, obtained judgment for a return of the property, and sued out a writ of inquiry of damages, &c. The logs measured 63,582 feet, board measure, and cost the defendant $3 25 per 1000 feet, delivered on the canal near his saw-mills in Royalton, Niagara county, where they were replevied by the plaintiffs in the summer of 1832. The writ of inquiry was executed in January, 1838. The defendant proved that his principal business was the sawing of logs, and transporting the stuff to market; that he might have sawed the logs, taken by the plaintiffs under the writ of replevin, in the summer of 1832; that those being taken away, he had an inadequate supply for his mills; and that it was difficult to supply the deficiency before the ensuing winter. He also proved what would have been the value of the stuff, made from the logs taken by the plaintiffs, in the Albany and Troy markets in the summer of 1833, (at which *time* it would, in the ordinary course of business, have reached those places, and at which *places* the defendant usually dealt,) deducting from such estimate the cost of preparing the lumber for and transporting it to market. The defendant also proved that the logs in question were *sawed* by the plaintiffs: All which evidence was objected to by the plaintiffs as inadmissible, on the ground that the proper measure of damages was the

difference between the value of the logs at the time of the deliverance, and what would have been their value at the present time, with interest from the time of deliverance ; but the objection was overruled, and the testimony received. By the inquisition, it appears the plaintiff's damages were assessed at $452.

*A. Taber*, tor the plaintiffs, moved to set aside the inquisition.

*J. A. Spencer*, for the defendant.

*By the Court*, Cowen, J. In this case the judgment for a return will enable the defendant to recover the value of the logs, if not specifically returned, as it seems they cannot be, for it was in proof that the plaintiff had converted them The object of the writ of inquiry was to assess damages for the *detention*. This is ordinarily, as in *trespass de bonis* or *trover* the interest upon the value of the goods when taken, from the time of the taking to the day of assessing the damages, or perhaps the *quarto die post* or judgment day of the succeeding term. There are exceptions to this rule, as where it appears in an action of trespass that the goods were taken tortiously, and without color of right. In such case the jury may assess exemplary damages.

It has lately been held at nisi prius, that the plaintiff may recover special damage in *trover*, where it is laid in the declaration. The defendant had taken the plaintiff's pony, which was useful to him in the way of his trade ; and he was allowed to recover the consequent expense of hiring another horse, deducting from that the amount he would have paid for keeping his own horse during the time. *Davis* v. *Oswell*, before Parke, B., 7 Carr. & Payne, 804. It was agreed that the point had never been decided ; and it would be extremely inconvenient, not to say dangerous, to allow a plaintiff to lie still in his trade for such an inadequate cause, and charge the defendant with all the profits of his business upon the conjectural estimate of a jury.

Where the writ of replevin has obviously been perverted to the purpose of a wilful injury, with a full consciousness in

the plaintiff that he has no claim, the jury may perhaps assess smart money, as they might for a wilful and malicious trespass. That would certainly be going far enough. It supposes a right to recover damages as for a malicious prosecution; and to go even thus far would be dangerous unless a malicious replevin be considered as an exception to the rule which allows an independent action for a vexatious suit.

Here was no evidence before the under sheriff that the wrong done by the replevin in question, was any thing more than the honest assertion of a supposed claim by the plaintiffs. That they acted fraudulently, is not to be presumed; but the contrary. Much of the evidence given before the under sheriff was admissible to show the market value of the goods at the time when, and place where, they were taken by the writ. The ultimate value at Albany or Troy, when in the ordinary course of business the boards would reach there, deducting the expense of manufacture and the price of transportation, were proper topics of inquiry, with a view to the ascertainment of value at the canal; but that once being fixed in the mind of the jury, the measure of damages was in this case the legal interest upon such value to the day of the inquisition, or at farthest to the next term. Special damages for interruption in the defendant's business could not be allowed; and, therefore, the testimony received with a view to fix their amount should have been excluded. I can hardly suppose a case in which this evidence would be admissible, unless where the plaintiff is shown to have fraudulently brought his replevin for the purpose of working such a mischief. It is enough to say that the damages found here are much too high upon any principle which the jury were authorized to adopt. I cannot collect from the evidence that the logs were worth over $250 or $260; and the inquisition has, for a detention of that sum about six years, allowed $452.

The inquisition must be set aside without costs.