Spicer *v.* Waters.

## SPICER and others *vs.* WATERS.

65b 227
8ap572

65b 227
15ap 45

65b 227
82 AD'365

A *bona fide* purchaser is one who buys property of another without notice that some third person has a right to, or interest in, such property, and pays a full and fair price for the same, at the time of such purchase, or before he has notice of the claim or interest of such other in the property.

To constitute one a *bona fide* purchaser, it is not enough to show a conveyance good in form; but payment of the consideration must be made out. It must be actually paid; not merely secured to be paid.

If the title of a purchaser is void as against the creditors of his vendor, by reason of fraud, that defect attaches to the title of every subsequent purchaser who is not a *bona fide* purchaser without notice.

A judgment may be assailed collaterally, for fraud, by persons not parties to it, or privies who are injured by it. Thus it is competent for a creditor to assail collaterally a judgment against his debtor, for that cause.

When the only fraud imputed is that which is presumed from the omission to change the possession, after purchase, if the property be of a ponderous nature—as lumber—the court might hold the presumption rebutted by the character of the property purchased.

But under the Revised Statutes, the question of fraudulent intent is for the jury, and not for the court; and it may not be taken from the jury, and decided as a question of law, by the court.

The general rule is that in an action for the conversion of personal property, the measure of damages is the market value of the property at the time and place of conversion, with interest thereon to the time of the trial. But there are several modifications, or exceptions, to the general rule.

Where, in an action for the conversion of lumber which, it was proved, had a market value at the place of conversion, the court charged the jury that if the lumber was to be taken to the Troy market, to be sold there, in the plaintiffs' lumber yard, they were entitled to recover its market value there, less the cost and risk of transportation; *held* that the charge was erroneous.

THIS action was brought to recover the value of lumber, alleged to have been illegally converted to the use of the defendant.

The answer alleges that Cyrus W. Pratt, on the 15th day of November, 1861, recovered judgment against one Richard Carter, in this court, for the sum of $849.73, and on the 4th of February, 1862, said Pratt recovered another judgment, against the same defendant, in this court, for $1,062.02. On the 23d of December, 1861, Royal D. Strickland recovered a judgment against the said Carter for $292.05. Executions were issued on these judgments, to the defendant, then being sheriff of Lewis county, and by virtue thereof he seized and sold the property in the complaint mentioned, then being the property of the said Carter, and not the property of said plaintiffs.

On the trial, the plaintiffs proved that they were lumber merchants, residing and doing business in Troy, in this State, and on the 30th of December, 1861, they entered into a written agreement with Leonard Carter, whereby he sold to them, in consideration of $400 to be paid to him in four months after receiving lumber made from the logs thereby sold, or from the mill thereby let to the plaintiffs, sufficient, at its fair market value, to pay the same and its transportation to the city of Troy, all the hemlock and spruce saw logs on certain lots in the Brantingham tract, in the town of Greig, in the county of Lewis, being about 4000, and being the same recently purchased by said Carter at sheriff's sale on execution against Richard Carter, and to allow the plaintiffs the free use of the tools &c. connected with the said mill, on one of the said lots, and also the free use of their house for one year, to be used only in lumbering. In addition to the consideration above mentioned, the consideration of one dollar was mentioned in the contract.

The plaintiffs had for several years received consign-

ments of lumber from Richard Carter, but they had never been on the premises where the lumber was manufactured. When the agreement was made between the plaintiffs and Leonard Carter, Richard was present.

On the same day the written agreement was made, or the next, the plaintiffs entered into an agreement with Richard Carter to saw the logs, as aforesaid purchased of Leonard, the plaintiffs to furnish the means to do the work, Richard to have a reasonable compensation over and above his living, to be settled thereafter. Richard proceeded to saw the lumber, and the plaintiffs furnished supplies to the amount of $1,500, up to the sale of the lumber by the defendant. No part of the purchase money was paid to Leonard Carter before the sale by the defendant. Some of the avails of the lumber sawed by Richard under the contract had been received by the plaintiffs before the defendant's sale.

At the time of making the purchase by the plaintiffs, they did not know how Leonard acquired his title to the property sold to them, nor had they learned it before that time; nor were they informed of the manner in which business had been conducted between Leonard and Richard after the purchase by the former, at sheriff's sale, of the logs sold to the plaintiffs.

At the time of the purchase, the plaintiffs knew that Richard Carter was in possession of the premises on which the logs &c. were, and that he had been carrying on the lumber business.

Richard Carter, who was called as a witness by the plaintiffs, stated the agreement between him and the plaintiffs somewhat differently from the other witness on the part of the plaintiffs. Carter says he was to have $400 for his services, besides his living. He was indebted to the plaintiffs in some $2,000 or $3,000, but nothing was said about paying that debt, when the agreement between Leonard and the plaintiffs was made.

This witness further testifies that his brother's execution was levied on the logs in question in July, 1861, but when the sale was made does not appear.

The defendant's counsel asked the witness whether an agreement was made between him and his brother Leonard, after the levy, to delay the sale. This question was objected to, on the ground that the plaintiffs were *bona fide* purchasers of the property. The court decided that as the case then stood the plaintiffs were *bona fide* purchasers for a valuable consideration, and sustained the objection and rejected the evidence until it should be shown that the plaintiffs' purchase was at least suspicious.

The defendant's counsel then offered to prove that Leonard Carter claimed title to the property only by virtue of a purchase made on a sale on execution in his favor against Richard, and that the sale by the defendant was made on a valid execution issued on a judgment duly recovered for debts due before the levy of said execution. And the defendeant also offered to prove fraudulent transactions, by means whereof Leonard Carter had no title to the property sold to the plaintiffs, at the time of such sale, and that the judgment in favor of Leonard against Richard, and the sale to the purchaser by Leonard, were fraudulent and void, as against creditors ; and that after such sale the property was left in the possession of Richard without any change of possession.

To the evidence thus offered the plaintiffs' counsel objected, on the ground that the plaintiffs were shown to be *bona fide* purchasers, and the objection was sustained, and the defendant's counsel excepted.

Evidence was given on the part of the plaintiffs showing the value of the lumber in question at Troy, and on the part of the defendant to show its value at the place where the conversion occurred. In the charge to the jury the court instructed them that if the lumber was to

be taken to the Troy market, to be sold there in the plaintiffs' lumber yard, they were entitled to recover its market value there, less the cost and risk of transportation; to which charge the defendant's counsel excepted.

The jury found in favor of the plaintiffs for $1,000, being, as the case states, the value of the lumber at the Troy market.

From the judgment entered on the verdict, the defendant appealed.

*Levi H. Brown*, for the appellants.

*W. A. Beach* and *D. Pratt*, for the respondents.

MULLIN, J. The first and most important question presented by this appeal is, whether the plaintiffs were *bona fide* purchasers of the logs from which the lumber in question was made. If the learned judge was wrong in holding the plaintiffs to be such purchasers, there must be a new trial, as the whole of the defence was excluded, because the defendant did not throw over the *bona fides* of the plaintiffs sufficient suspicion to make it either necessary or proper to submit the question to the jury.

A *bona fide* purchaser is one who buys property of another without notice that some third person has a right to, or interest in, such property, and pays a full and fair price for the same, at the time of such purchase, or before he has notice of the claim or interest of such other in the property.

The chancellor, in *De Mott* v. *Starkey*, (3 *Barb. Ch.* 403,) thus states the principle: "To entitle a party to the character of a *bona fide* purchaser without notice of a prior right or equity, he must not only have obtained the legal title to the property or the negotiable security, but he must have paid the purchase money, or some part thereof, at least, or have parted with something of

value upon the faith of such purchase, before he had notice of such prior right or equity."

In *Jackson* v. *Cadwell*, (1 *Cowen*, 622,) it was held that to constitute a *bona fide* purchaser, it is not enough to show a conveyance good in form, but payment of the consideration must be made out. It must be actually paid, not merely secured to be paid, for otherwise the purchaser would not be hurt.

Chancellor Kent, in *Jewett* v. *Palmer*, (7 *John. Ch.* 65,) says: "To support the plea of *bona fide* purchase without notice, the defendant must aver and prove not only that he had no notice of the plaintiff's rights before his purchase, but that he had actually paid the purchase money before such notice. Though he secured the purchase money, yet if it was not in fact paid, before notice, it will not be sufficient to maintain his plea." (*See, also, Root* v. *French*, 13 *Wend.* 570.)

It is not pretended that the plaintiffs had paid, or secured to be paid, any part of the consideration of the logs. If payment of the price is essential to make their title valid, they must of course fail.

But if the title of Leonard Carter was valid as against the creditors of Richard, those creditors cannot seize and appropriate the property because the plaintiffs have purchased on credit.

If, on the other hand, Leonard's title was void by reason of fraud as against the creditors of Richard, that fraud would defeat the plaintiffs' title, unless they were purchasers *bona fide* without notice.

Without stopping to consider whether the evidence given on the part of the plaintiffs proved or had a tendency to prove fraud in the sale to Leonard, or fraud in the dealings in reference to the property subsequent to such sale, the offer of the defendant to prove fraud between Richard and Leonard presents the question whether such fraud constitutes a defence to the action. That offer is in terms to show the title of Leonard void

as to creditors, by reason of fraud, and particularly because there was no change of possession after the purchase by Leonard.

If Leonard was the party suing, this fraud would be a complete defence to the action. It follows that if Leonard's title is defective, that defect attaches to the title of every person not a *bona fide* purchaser without notice. The purchasers are not such purchasers, and hence their title must fail with that of their vendor.

These views are predicated on the assumption that it is competent for a creditor to assail collaterally a judgment against his debtor, for fraud. If he was not at liberty to do so, of course proof of fraud would be wholly irrelevant, against the creditor recovering the fraudulent judgment. It is not necessary, at this day, to cite cases in support of the proposition that a judgment may be assailed collaterally, for fraud, by persons not parties to it, or privies who are injured by the fraud. The cases will be found collated in 2 *Cowen & Hill's Notes*, 854, *et seq.*

If the only fraud imputed is that which is presumed from the omission to change possession after the purchase by Leonard at the sale on his execution, we might hold the presumption rebutted by the character of the property purchased. It was held in *Farrington* v. *Sinclair*, (15 *John.* 428,) that the omission for a few days to remove the wood, it being a ponderous article, was not *per se* sufficient evidence of fraud. But under the Revised Statutes the question is for the jury, and not for the court ; and it may not be taken from the jury and decided as a question of law, by the court. The statute (2 *R. S.* 137, § 4) is peremptory that the question of fraudulent intent, in all cases arising under that chapter, (*chap.* 7,) shall be deemed a question of fact, and not of law. (*Edgell* v. *Hart,* 9 *N. Y.* 218.)

I am of the opinion that the learned judge erred in

holding the plaintiffs to be *bona fide* purchasers, and for that reason excluding the defence of fraud.

I am also of opinion that the charge that the plaintiffs were entitled to recover the value of the property at Troy, less expenses of transportation, was erroneous.

The general rule is, that in an action for the conversion of personal property, the measure of damages is the market value of the property at the time and place of conversion, with interest thereon to the trial. (*Cortelyou* v. *Lansing*, 2 *Caines' Cas.* 200. *Kennedy* v. *Strong*, 14 *John.* 128. *Smith* v. *Griffith*, 3 *Hill*, 333. *Andrews* v. *Durant*, 18 *N. Y.* 496. *Sedg. on Dam.* 473 *et seq.*, and cases cited by the court in *Suydam* v. *Jenkins*, 3 *Sandf.* 626.)

There are several modifications or exceptions to this general rule:

1st. When the property has no fixed value, but is fluctuating, the measure of damages is the highest price in the market between the time of conversion and the trial. (*Sedg. on Dam.* 479. *But see Suydam* v. *Jenkins*, 3 *Sandf.* 614.) This is the measure of damages in the case of the conversion of stocks. (*Romaine* v. *Van Allen*, 26 *N. Y.* 309.)

2d. When the plaintiff's interest in the property is by way of lien, the extent of the lien is the measure of the damages. (*Parish* v. *Wheeler*, 22 *N. Y.* 494. *Sedg. on Dam.* 482.) When the wrongdoer is without claim to the property the special property-man may recover the value. (*Alt* v. *Weidenberg*, 6 *Bosw.* 176.)

3d. When the property taken has been made more valuable by the labor of the defendant, the owner is entitled to its enhanced value. (*Baker* v. *Wheeler*, 8 *Wend.* 505. 6 *John.* 168. 7 *Cowen*, 98. *Rice* v. *Hollenbeck*, 19 *Barb.* 664. 3 *N. Y.* 379. 5 *John.* 348. 10 *id.* 237. *But see Hyde* v. *Cookson*, 21 *Barb.* 92.)

4th. When special damages are laid in the complaint, it has been held they may be recovered. (*Davis* v.

*Oswell,* 7 *Car. & P.* 804. *Contra, Brizsee* v. *Maybee,* 21 *Wend.* 144.)

5th. When the property has no market value, such as paintings, manuscripts &c., the damages are in the discretion of the jury. (*Sedg. on Dam.* 474.)

The case before us is not within any of the modifications or exceptions to which I have referred.

I have not been able to find any case in which the measure of damages adopted in this case has been recognized, unless *Suydam* v. *Jenkins* (3 *Sandf.* 614) is one. Duer, J., in discussing the measure of damages for the conversion of personal property, there lays down the general rule as I have stated ; but insists that there are cases in which the owner may be entitled to a higher compensation—as when the property is taken on its way to a more profitable market, where it would certainly have arrived. In such case he thinks the market value at such place, less the cost of transportation, is the true rule of compensation. But he cites no case in support of it, and it cannot be reconciled with the case of *Brizsee* v. *Maybee,* (21 *Wend.* 144.) In that case the action was replevin, for logs. The defendant had a verdict, and on the execution of a writ of inquiry he gave evidence of special damages. He proved that he was accustomed to send his lumber to Albany and Troy for sale, and the value of the lumber which might have been made from the logs after deducting the expenses of manufacturing and transportation. The court set aside the inquest, holding the defendant not entitled to the special damages proved. In reference to the evidence of value at Troy &c., Cowen, J., says : " Much of the evidence given before the under-sheriff was admissible to show the market value at the time when,. and the place where, they were taken by the writ. The ultimate value at Albany or Troy, when in the ordinary course of business the boards would reach there, deducting the expenses of manufacture and the price of

transportation, were proper topics of inquiry with a view to the ascertainment of value at the canal; but that being once fixed in the minds of the jury, the measure of damages in the case was the legal interest on such value to the day of the inquisition, or at farthest to the next term."

No proof of the value of the lumber at the canal was given, and hence the only way to get at the value was to prove the price at the nearest market, and deducting from that the expenses of manufacturing and of transportation gave the value or price at the place of conversion. But such evidence is never admissible when it appears that the property has a market value at the time and place of conversion. The very object of the evidence of price at Troy was to arrive at the value at the place of conversion. There being no market there, there was no other mode of arriving at it.

In this case, a market value was proved at the time and place of sale, by the defendant, and that price, with interest, is the only and true measure of damages.

For these errors occurring on the trial, I am in favor of reversing the judgment, and granting a new trial, with costs to abide the event.

MORGAN, P. J., concurred.

BACON, J., dissented.

New trial granted.

[ONONDAGA GENERAL TERM, January 2, 1866. *Morgan, Bacon* and *Mullin,* Justices.]