HENRY V. SCATTERGOOD, RESPONDENT, *v.* SAMUEL G. WOOD AND THOMAS G. WOOD, IMPLEADED, WITH G. DUDLEY VAN VLIET, APPELLANTS.

*Action of replevin — measure of damages in.*

The plaintiff was the owner of a machine called the American Needle Cotton Gin and Condenser, having invented the principle of the machine, he constructed the one in question as a model to experiment with, and to exhibit at two fairs to be shortly thereafter held. Defendants, who had contracted to purchase the invention, wrongfully took the machine from the plaintiff for the purpose of experimenting with it themselves, and to prevent him from exhibiting it at the said fairs, where they themselves intended to exhibit a rival machine of their own. Plaintiff subsequently manufactured another machine at a cost of $825, but it not being completed in time, plaintiff was unable to exhibit it at one of the fairs.

In an action brought by him to recover the first machine and damages for its detention, it appeared that the machine had so depreciated in value as to be worth only five dollars, the cost of the materials used in its construction ; and he was allowed as damages for the detention thereof, the expense incurred in building the second machine, together with interest thereon.

*Held,* that the allowance of damages was as favorable to the defendant as he had a right to ask.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

*Samuel Wood,* for the appellants. The measure of damages is the value of *the article* at the time of conversion, with interest.

(*Spicer* v. *Waters*, 65 Barb., 227; *Buzsee* v. *Maybee*, 21 Wend., 144; *Tremain* v. *Smart*, 4 Lans., 263; *Tiedman* v. *O'Brien*, 36 N. Y., 538.)

*J. E. Dewey*, for the respondent. The measure of damages adopted by the referee was even more favorable to the defendants than was warranted by the case. The plaintiff had particular use for this machine of which defendants were apprised. They directly and designedly prevented him from putting it to such use. Being in competition with him, they forcibly deprived him, for the time being, of the use of his invention and of the means he had provided with which to compete with them; and they did so, to prevent his successful competition with, and to favor their own invention. (*Blanchard* v. *Ely*, 21 Wend., 350; *Dewint* v. *Wiltse*, 9- id., 326.) Their acts being deliberate and willful, the law applies liberal relief; and even holds the wrong-doer answerable for consequences very remote from the original act. (Sedg. Dam., 79, 531; *Lowery* v. *West*, U. T. Co., 60 N. Y., 201-2; *Wilde* v. *Hextor*, 50 Barb., 449; *Alaback* v. *Utt*, 51 N. Y., 651; *Silsbury* v. *McCoon*, 3 Comst., 379, 391.) This may justly be likened to those cases where the *pretium affectionis* is awarded; in which the market value of the thing taken is held to be no criterion of its value to the owner, but where his estimate of value is to govern, especially, as here, against willful wrong-doers. (Sedg. Dam., 65, 474; *Suydam* v. *Jenkins*, 3 Sandf., 615, 621; 2 Pars. on Cont., 471 [1st ed.]; *Watson* v. *The Ambergate, etc., R. Co.*, 15 Jur., 448; S. C. 3 E. L. & Eq. Rep., 497; See *Simpson* v. *London, etc., R. Co.*, L. R. Q. B. D., 274; See Abst., 13 Alb. L. J., 413.) Here, it was a new article — no sales — no market value — and everything tending to show the advantages accompanying its possession is to be considered. (*Booth* v. *Spuyten D., etc., Co.*, 60 N. Y., 487, 493; *Woodward* v. *Bugsbee*, 2 Hun, 128; *Harris* v. *The P. R. Co.*, 3 Bosw., 17; *Cook* v. *Soule*, 45 How., 340; *Wemple* v. *Stewart*, 22 Barb., 154; *Simpkins* v. *Low*, 49 Barb., 394; *Sternfels* v. *Clark*, 2 Hun, 122.) If the article has a usable value, the value of its use during its detention, is a proper item of damages. (*Allen* v. *Fox*, 51 N. Y., 562.) So, what one necessarily expends, to supply the place of the

article taken. (*Clinton* v. *Townsend*, 1 T. & C., 330; *Davis* v. *Oswell*, 7 Carr. & P., 804; *Johnson* v. *Holyoke*, 105 Mass., 80.) So, time and expenses paid, while searching for it. (*McDonald* v. *North*, 47 Barb., 532; *Sprague* v. *McKenzie*, 63 Barb., 60; *Bennett* v. *Lockwood*, 20 Wend., 223; *Miller* v. *Garling*, 12 How., 203.) The depreciation in the value of the machine, during its wrongful detention, must be included in the damages for detention. (*The N. Y. G. & Ind. Co.* v. *Flynn*, 55 N. Y., 653; *Allen* v. *Fox*, 51 id., 564–5; *Brewster* v. *Silliman*, 38 N. Y., 423.) Special damages, by reason of depreciation in the value during detention by defendant, need not be alleged in actions for claim and delivery. (*Young* v. *Willet*, 8 Bosw., 486; *Woodruff* v. *Cook*, 25 Barb., 511–12.)

OSBORN, J.:

This action was brought to recover the possession of a cotton-gin, with damages for detention, to the amount of two thousand five hundred dollars. After issue was joined it was referred to A. B. Voorhees, Esq., as sole referee to hear and determine. On the 19th day of October, 1875, he made his report, in which he found: First—that the plaintiff was the owner of a machine called the American Needle Cotton-Gin and Condenser. Second—that the principle of such machine was the invention of the plaintiff, and that this machine was made as a model or test one for experimenting in ginning of cotton, and that no other machine of that principle had ever been manufactured. That it was plaintiff's intention to exhibit the same as his invention in the fall of 1867 at fairs in New York and Baltimore. Third—That on the fourth of September, 1867, defendants wrongfully and forcibly took the same from plaintiff. Fourth—That at the time of such taking defendants had contracted with plaintiff to purchase the invention when it should be patented, and that the object of such wrongful taking was to experiment or test such machine themselves. The action was commenced December 12th, 1867, but defendants kept possession by giving the bond required by law. That the materials and labor in constructing this machine were worth nineteen hundred and fifty dollars. Fifth—That after such taking plaintiff commenced to make another machine containing the same princi-

ple, to take the place of the one wrongfully detained by defendants, to be used as a model or trial one for exhibition; this was completed in time for the Baltimore fair, but not in time for the New York fair, and this last machine cost eight hundred and twenty-five dollars. Sixth—That plaintiff was unable to exhibit this invention at the New York fair, by reason of the wrongful acts of defendants. That the gin so depreciated in value that at the time of the trial it was only worth five dollars, being the value of the materials used therein.

As a conclusion of law the referee found that the plaintiff was entitled to a judgment for the delivery of the machine, or for five dollars, the value thereof at the time of the trial, if it could not be delivered, together with the sum of one thousand two hundred and eighty-seven dollars, being the amount expended in constructing the second machine, with interest, as damages for the wrongful detention thereof, besides costs.

Upon this report judgment was duly entered, and from such judgment the defendants appeal.

The only real question presented for examination on this appeal is whether the rule of damages adopted by the referee can be sustained. Indeed, this was the only question seriously urged or discussed upon the argument. The solution of this question will, therefore, necessarily determine the result. Upon the settlement of the case, certain additional findings of fact of great importance, it seems to me, were found by the referee, and must not be overlooked.

1st. That the value of the labor and materials expended in making and manufacturing the machine taken by defendants was $1,950. 2d. That, when it was taken, plaintiff intended to exhibit it at these fairs, and the defendants knew this purpose and intention. 3d. That one of the purposes and objects of the defendants in taking such machine was to prevent such exhibition and to prevent competition with a cotton gin of a different device or invention which defendants had, and which, in fact, they exhibited and experimented with at both said fairs. 4th. That, at the time of the wrongful taking, there was no market value therefor, but that it was worth to the plaintiff the amount of the labor and materials expended by him in the making thereof. 5th. That

plaintiff has sustained damages by the wrongful taking and detention, in being deprived of the use of said machine, and in the value thereof during such detention. The defendants excepted to all of the original and supplemental findings of fact, but, from a careful examination of the evidence, I am of the opinion that there is at least some evidence to support each finding, and that the conclusions of the referee as to the facts cannot, therefore, be disturbed. The principle is too familiar to require argument or authority, that the report of a referee, like the the verdict of a jury, must be deemed conclusive as to the disputed questions of fact. even though the appellate court might arrive at a different result or conclusion from the evidence. The court has the undoubted power to set aside such report or verdict, where the preponderance of evidence is so clear as to indicate prejudice, corruption or passion, or a manifest disregard of what is evidently the truth, but I am unable to find anything in this case to warrant the exercise of this power of discretion.

This now brings us to the only question involved, as before stated, Did the referee adopt the true rule or measure of damages in a case like the one under discussion? Every lawyer understands that, in ordinary cases of this character, the measure of damages is the value of the property at the time of the conversion, with interest. (*Spicer* v. *Waters*, 65 Barb., 227; *Brizsee* v. *Maybee*, 21 Wend., 144; *Twinam* v. *Swart*, 4 Lansing, 263.) But there are exceptions to this general rule. Many cases may be imagined where, if no other rule of damages could be applied, the greatest injustice would be done. In Sedgwick on Damages, p. 481, 2d ed., the following language is employed: "The ordinary rule applies, unless the plaintiff has been deprived of some particular use of his property, of which the other party was apprised, and which he may be thus said to have directly prevented." In such cases, a different rule applies. Again there are a class of cases where the taking or detention is deliberate and willful. In such cases, a different measure of damages may be applied and the wrong-doer held responsible for consequences quite remote from the original act. (Sedgwick on Damages, 79, 531; *Wilde* v. *Hexter*, 50 Barb., 449; *Allaback* v. *Utt*, 51 N. Y., 651; *Silsbury* v. *McCoon*, 3 Comstock, 379, 391.)

There are a class of cases where the property converted has no fixed, settled or market value. Can a person who wrongfully takes property of this character escape the full consequences of his wrong, simply because the party complaining cannot show a market value to the property of which he has been deprived? To the real owner it might possess a value which could hardly be estimated. Suppose a valuable portrait painting of a deceased friend is the subject of conversion. It has no market value. It cannot be purchased. In such a case, shall the real owner be turned out of court without damages, because no market value can be given or placed upon the property converted? Shall he not be allowed to recover at least the cost of the article, which a willful wrong-doer has defrauded him of ? (Sedgwick on Damages, 65, 474; *Suydam* v. *Jenkins*, 3 Sandford, 615, 620.)

In the case of *Parsons et al.* v. *Sutton and others* (66 N. Y., 92), which was an action to recover damages for a breach of contract to sell and deliver certain articles, the court holds "that the ordinary rule of damages in such a case is the difference between the contract price and the market price at the time and place of the delivery. When the buyer can go into the market and buy the article which the seller has failed to deliver, this is the only rule, as it offers the buyer full indemnity. But special damages are allowed when this rule will not furnish full indemnity. If there is no market for the article where it is to be delivered, and it cannot be had there with reasonable diligence, and the buyer suffers damage because of the seller's failure to deliver, which is the proximate and natural consequence of such failure, such damages can be recovered." (*Suydam and others* v. *Jenkins*, 3 Sandf., 615, 621.)

In Mayne on Damages (206), the following language is employed: "Instances may occur in which goods are intended not for mere sale, but for some special purpose which has been frustrated by their conversion; loss thus arising may be recovered."

In this case the referee finds that the machine taken by defendants had no market value. Indeed, it seems to have been the only one of the kind in existence. It was supposed to contain a principle invented by the plaintiff, of great value, and which

would render it far superior to any other article of the same kind in use. For this invention the plaintiff was about applying for letters patent. This machine had been constructed at a cost of $1,950, and with a view to show off or demonstrate the new principle involved, at the fairs in New York and Baltimore the same fall. It had no present market value. Its future value was entirely dependent upon circumstances. All these things the defendants knew, and possessing such knowledge, they wrongfully took and detained the same. What was the plaintiff to do? Besides, the referee finds that it was an intentional wrong-taking; that defendants did so to prevent plaintiff from exhibiting his machine and the principle involved, at these fairs, as it would bring him in competition with them, they owning another machine calculated for the same purpose. I think the plaintiff, under such circumstances, was justified in incurring the expense of building another machine, as he did, and which cost one thousand dollars less than the one taken.

At the time of the trial, the machine had so far depreciated in value as to be worth only five dollars — in a word, just what the material was worth for other purposes. From this it is fair to assume that it turned out that the principle involved in the invention of the plaintiff had been demonstrated to be valueless. But this could not be known or reasonably assumed at the time of the conversion. From what appears in the case, it is evident that at the time all the parties regarded it as of great value.

I am of the opinion that the referee has adopted as favorable a rule for damages as the defendant could possibly ask. The plaintiff constructed a new machine at a much less cost than that of the one taken. This was made necessary by the wrongful acts of the defendants. The damage therefor fixed by the referee was the natural and reasonable result of the defendants' acts. Nothing is included for any loss or injury in not having the machine to exhibit at both fairs, as the plaintiff had expected to do. The plaintiff is allowed nothing but the actual and necessary expense to which he was put in making another article similar in kind to the one converted, and with the view of accomplishing just what

he had designed to do with the one taken from him, and which was well known to the defendants.

The judgment appealed from must be affirmed with costs.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment affirmed with costs.