(110 App. Div. 503)

### WALLINGFORD v. KAISER, Sheriff.

(Supreme Court, Appellate Division, Fourth Department. January 3, 1906.)

1. TROVER AND CONVERSION—DAMAGES.

> Where a shipment of horses intended for sale at place of destination was converted in the course of the transportation, the measure of damages was the market value of the horses at their destination at the time they would have arrived there if they had not been converted, less the expense of transportation and the cost in selling them there.
>
> [Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trover and Conversion, §§ 260–264.]

2. ATTACHMENT—WRONGFUL ATTACHMENT—MEASURE OF DAMAGES.

> Where horses intended for sale at place of destination were wrongfully attached in the course of transportation, and the shipper bid them in at the sheriff's sale, the measure of damages was the amount of the bid.
>
> [Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attachment, §§ 1382–1384.]

3. EVIDENCE—OPINION EVIDENCE—EXAMINATION OF WITNESSES.

> On the issue of the market value of a specified number of horses, a question asked a witness for his opinion as to the value which assumed that the horses were carriage horses, sound and in fine condition, each weighing about 1,150 pounds, of the average age of 6½ years, none over eight and none under five, of various colors, was improper; it being impossible for an expert to estimate the value from such description.
>
> Spring, J., dissenting in part.

Appeal from Trial Term, Erie County.

Action by Frank E. Wallingford against Harry Kaiser, as sheriff of the county of Erie. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

L. P. Hancock, for appellant.
Irving W. Cole, for respondent.

NASH, J. The action was brought to recover damages for the conversion of a car load of 16 horses, the property of the plaintiff, consigned from Chicago, Ill., to James Johnson at Liverpool, England;

seized by the defendant as sheriff of Erie county, upon a warrant of attachment issued in an action by Hector Vervaeck against James Johnson. The defendant testified his levy under the attachment, claiming that the title of 'the property attached was in James Johnson. The plaintiff gave evidence to the effect that the horses were purchased by Job M. Johnson as the agent of the plaintiff, and consigned to James Johnson, who was also the agent of the plaintiff to receive the horses and sell them for the plaintiff. At the close of the evidence both the plaintiff and defendant requested the direction of a verdict, and the court resolved all questions of fact by directing a verdict in favor of the plaintiff, except the assessment of damages, which was submitted to the jury. There was no request by the defendant to submit any question of fact to the jury, except to charge that there was no evidence in the case upon which a verdict for damages could be rendered. The defendant excepted to the charge that the jury were to find, as damages, the value of the horses in England.

The general rule for ascertaining the sum which an injured party ought to recover in all cases where personal property is wrongfully taken or detained, is very fully discussed by Duer, J., in the case of Suydam v. Jenkins, 3 Sandf. 620–622, in the course of which he says it seems to be manifestly just that the injured party must be fully indemnified; that he must be placed in the ·same situation in which he would have been had the wrong not have been committed. Adopting this rule, it was proper to submit to the jury, as the damages which the plaintiff was entitled to recover, the market value of the horses at Liverpool, England, the place of their destination, at the time they would have arrived there, if they had not been interrupted in their journey at Buffalo, less the expense of getting the horses over to Liverpool and selling them. The horses were in transit from Chicago to Liverpool, and it is reasonably certain that they would in the due course of transportation have reached their destination, if they had not been interfered with at Buffalo. In a well-considered case in Missouri, the rule was applied in an action for the wrongful conversion of a shipment of flour, interrupted at New Orleans, in the course of its transmission from St. Louis to Boston, Farwell v. Price, 30 Mo. 587. The case is not in conflict with Brizsee v. Maybee, 21 Wend. 144, and Spicer v. Waters, 65 Barb. 227. In neither of those actions was the property taken from the owner while in the course of transmission to market, as in this case.

Five of the horses attached were bid in for the plaintiff at the sheriff's sale. As to those the measure of damages is the amount bid for them at the sale. Baker v. Freeman, 9 Wend. 36, 24 Am. Dec. 117; Vedder v. Van Buren, 14 Hun, 250; Bedell v. Barnes, 17 Hun, 353. It was error, therefore, to permit a recovery for their value at Liverpool. The judgment might be modified by reducing the value of those to the amount bid for them, but for an error in the reception of evidence which requires a reversal of the judgment.

The plaintiff, Wallingford, under objection and exception, was permitted to answer this question:

"Q. Assuming that the 16 horses in question, attached by the defendant at Buffalo, N. Y., on the 16th of January, 1904, were American carriage horses,

sound and in prime condition, weighing 1,150 pounds or thereabouts each, and averaging that weight, of the average age of six and one-half years, none over eight and none under five years of age, one of which was a blue roan in color, one chestnut, two black, and the remainder browns and bays, what, in your opinion, were they reasonably worth in the market at Liverpool, in the latter part of January, and in February, 1904? A. I should say they were 70 pounds apiece."

The same question was put and answered by other witnesses for the plaintiff. It is manifestly error to allow evidence of that character. So much depends upon qualities of action and general appearance, shape and style, color, and apparent intelligence of a horse—in a word, the looks of the animal—that it is impossible for a person, however expert, to estimate its value from a mere description. A photograph, even, would give but a very meager idea of the qualities and value of a horse. The average value only was attempted to be given in answer to the question by the witnesses. Every horse has its distinctive value, as was shown in this case. The 5 horses were bid off at the sale at as many different prices. The 16 were purchased at prices averaging from $150 to $300. The value of the evidence is shown in the cross-examination of Mr. Wallingford, where he says:

"It is only a question of average. No person could testify as to what horses he had not seen and did not know anything about would be worth after a 3.000 mile journey. I could not testify. It is impossible."

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide the event, upon questions of law only; the facts having been examined and no error found therein. All concur, except HISCOCK, J., who concurs in result, and SPRING, J., who dissents.

SPRING, J. (dissenting). The action is conversion to recover the value of 16 horses which, it is alleged, the defendant unlawfully took from the possession of the plaintiff. The defendant, who was the sheriff of the county of Erie, justified under a warrant of attachment issued in an action against one Johnson, and seized and sold the property at Buffalo upon the assumption that it belonged to said Johnson. At the close of the evidence each side moved for a direction of a verdict, and the court ordered a verdict for the plaintiff, submitting, however, the question of damages to the jury. There is abundant evidence to sustain the recovery.

These horses, which were for carriage use, were purchased for the plaintiff in the West for the Liverpool market, gathered together at Chicago, and consigned to a man named Johnson in Liverpool, pursuant to a through contract by rail and steamer, and were seized by the defendant while in transit. The plaintiff had long been a dealer in carriage horses for this market, and was familiar with the value of this class of horses in Liverpool. He testified in his own behalf, and, after his experience and familiarity with the business had been fully proven, he was permitted, under objection and exception, to answer the following question:

"Q. Assuming that the sixteen horses in question attached by the defendant at Buffalo, N. Y. on the 16th day of January, 1904, were American car-

riage horses, sound and in prime condition, weighing 1,150 pounds or there-abouts each, and averaging that weight, of the average age of six and one-half years, none over eight and none under five years of age, one of which was a blue roan in color, one chestnut, two black, and the remainder browns and bays, what, in your opinion, were they reasonably worth in the market at Liverpool, in the latter part of January, and in February, 1904?"

The description contained in the hypothetical question tallies fairly well with that proven by the witnesses. I think the question is competent. Great latitude has been allowed to this class of testimony, given for the purpose of enlightening the jury upon the question of value. I think the testimony is of the same grade as where a witness was permitted to testify to the value of a clock which he had never seen, as in Whiton v. Snyder, 88 N. Y. 299–308; or as to the value of articles destroyed by fire by a person who had never seen them, but had purchased similar articles (Rademacher v. Greenwich Insurance Co., 75 Hun, 83, 27 N. Y. Supp. 155); or to the value of a boiler, engine, and machinery the witness had never seen (Orr v. New York, 64 Barb. 106); or, in an action for work, labor, and services, where the services are described in a hypothetical question to the witness, who had never seen the plaintiff work and knew nothing of the character of the services claimed, except as they were contained in the question framed for him McCollum v. Seward, 62 N. Y. 316; Seymour v. Fellows, 77 N. Y. 178.) There is abundant authority for the proposition that this class of testimony does not depend upon the personal observation of the witness. In Ingham's Law of Animals, the writer says, at page 644:

"Witnesses who are familiar with the kind of animals sued for are competent to testify as to their value, without ever having seen them, and without being experts."

So, in Lawson on Expert and Opinion Evidence (2d Ed.) p. 435:

"It is not necessary, to make his opinion competent, that the witness should have been acquainted with the particular thing whose value he testifies to, or even that he should have seen it."

In Slocovich et al. v. Orient Mut. Ins. Co., 108 N. Y. 56, 14 N. E. 802, the action was to recover on an insurance policy on a ship which had been burned. The vessel had been long in use, but an expert who had never seen it was permitted to testify as to its value from a description and information furnished him. The court say (page 64 of 108 N. Y., page 805 of 14 N. E.):

"It was not a sufficient objection to the competency of this witness that he had no personal knowledge of the ship. An expert is qualified to give evidence as to things which he has never seen. He may base an opinion upon facts proved by other witnesses, or upon facts assumed and embraced within the case. Questions may be put to him assuming the facts upon which he is asked to base his judgment and express an opinion."

In Smith et al. v. Indianapolis & St. Louis R. R. Co., 80 Ind. 233, it was necessary to prove the value of cows which had been killed, and proof of their value by experts who had never seen them was held to be competent. See, also, Whitbeck v. New York Central & H. R. R. Co., 36 Barb. 644.

These horses had never been in Liverpool. They had been converted and sold by the defendant. The plaintiff gave the best proof available

to him.  He could not bring experts from Liverpool, because they had never seen the horses, and therefore were not competent to testify as to their value under the rule adopted by the majority of this court.  All that was required of the plaintiff was to furnish whatever proof he could obtain on this subject.  The test in this class of cases is the reasonable accuracy of the description of the property contained in the hypothetical question.  If fairly described, the evidence is competent, but the weight of it is for the jury.  There would be no greater variation in the value of carriage horses given by expert witnesses than of a piece of real estate to the value of which witnesses testified after an inspection of it.

But in this case the question is wholly academic.  These horses were purchased by Job M. Johnson, a disinterested witness.  He was an expert in the value of carriage horses, was familiar with the Liverpool market, and had seen these identical horses.  He also testified as to their value, and there was but little difference in his estimate and that given by the plaintiff.  The verdict of the jury was less than the sum stated by Johnson.  The defendant gave no testimony whatever upon the subject, although he had possession of the horses.  There was, therefore, abundant competent testimony uncontradicted, which justified the verdict.  Even if the testimony of the plaintiff referred to was incompetent, the judgment should not be reversed, or any reduction made, as there was no evidence given by the defendant to impeach that given by the witness Johnson, who was competent to testify.

The rule has often been enforced that if there is competent testimony to sustain a question of fact, the judgment will not be reversed because of the reception of testimony which is inadmissible, if the defeated party has offered no proof to controvert the competent evidence.

The judgment and order should be affirmed, with costs.