## LOVELL *et al. v.* SHEA.

*(Superior Court of New York City, General Term.* March 14, 1892.)

1. TROVER AND CONVERSION—STOLEN PROPERTY.

    The owner of stolen property may maintain an action for conversion against a *bona fide* purchaser thereof.

2. SAME—TESTIMONY OF THIEF—CORROBORATION.

    In such action, a verdict against defendant was chiefly founded on the testimony of the thief. *Held*, that he was sufficiently corroborated by the fact that the box containing the property was empty, that he had an opportunity to steal the same, and that he was caught at defendant's place of business attempting to sell a portion of the property.

3. SAME—MEASURE OF DAMAGES—SPECIAL VALUE OF PROPERTY.

    Where the property in question consisted of stereotype plates of little or no marketable value, their special value to plaintiff, a book publisher, and not their value to defendant as old metal, was properly taken as the measure of his damages.

Appeal from jury term.

Action by Frank F. Lovell and others against Dennis Shea for conversion. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before DUGRO and GILDERSLEEVE, JJ.

*Johnston & Johnston,* for appellant. *Carter, Pinney & Kellogg,* for respondents.

GILDERSLEEVE, J. The complaint alleges the wrongful conversion by defendant of a quantity of stereotyped book-plates of the total value of $1,017.75, the property of plaintiffs. The plaintiffs are publishers. The defendant is a paper stock and metal dealer and general junkman. It is claimed by the plaintiffs that one Andrew J. McKenna, an employe of plaintiffs, stole the plates, and sold them to the defendant. The issues raised by the pleadings and submitted to the jury for determination were: (1) The ownership of the plates by plaintiffs; (2) the larceny of them by McKenna; (3) their purchase by defendant; and (4) their value. The trial resulted in a verdict in favor of the plaintiffs for the sum of $449.84. The action was properly brought. When a chattel once passes feloniously from the possession of the lawful owner, no subsequent holder can acquire any title thereto, except by consent of the owner. A *bona fide* purchaser of stolen goods for value, acting in ignorance of the fact that he was dealing with stolen goods, acquires no right of property therein by such purchase. He has no more rights than the thief. The right of property is absolute and inherent in the owner. Blackstone says: "The origin of private property is probably founded in nature; * * * but certainly the modifications under which we at present find it, the method of conserving it in the present owner, and of translating it from man to man, are entirely derived from society, and are some of those civil advantages, in exchange for which every individual has resigned a part of his natural liberty. The laws of England are, therefore, in point of honor and justice, extremely watchful in ascertaining and protecting this right." Chase's Bl. Comm. p. 78. "The general right of dominion which the owner of a chattel has in it entitled him to the use of it at all times and in all places." *Fouldes* v. *Willoughby,* 8 Mees. & W. 540. No country has attributed greater importance to this right than our own. Our laws recognize it as necessary to our happiness and prosperity, and throw around it the strongest safeguards. "Conversion is an unauthorized act, which deprives another of his property permanently or for an indefinite time. Wrongful intent is not an essential element in a conversion. It is enough that the rightful owner has been deprived of his property by some unauthorized act of another assuming dominion or control over it." See *Boyce* v. *Brockway,* 31 N. Y. 490; *Connah* v. *Hall,* 23 Wend. 462. If McKenna stole the plaintiffs' stereotyped book-plates, and sold and delivered them to the defendant, who purchased them,

even in the ordinary course of business, and without guilty knowledge, the defendant is liable to the plaintiffs. See *Pease* v. *Smith,* 61 N. Y. 477.

The question of demand does not arise in this case. The defendant admits in his answer that plaintiffs demanded a return of the chattels, or payment of the value thereof. If credit is given to the testimony offered by the plaintiffs, then the defendant received the chattels into his possession, and assumed dominion over them. Under such circumstances, no demand is necessary to sustain an action for conversion. It is only where a defendant has exercised no act of ownership over the property, and has proceeded in good faith, that a demand and refusal are necessary to put him in the wrong, and render him guilty of conversion. See *Pease* v. *Smith, supra.*

We do not feel called upon to discuss the position taken by the learned counsel for the respondents that the appellant is not entitled to claim, on this appeal, that the verdict, so far as it finds that defendant received the chattels in question, is insufficiently supported by the evidence, because he did not ask the court to direct a verdict in the defendant's favor on that ground. We think the technical rule that this proposition invokes may be safely disregarded. We are of the opinion that the verdict is fully and sufficiently supported by the evidence. True, the plaintiffs' main witness, McKenna, upon whose testimony the verdict is largely based, is, an acknowledged thief. It may fairly be presumed that his motives to make out a good cause for the plaintiffs are strong. But he is not entirely uncorroborated. The boxes that contained the chattels are empty. McKenna had an opportunity to steal the plates, and as to one lot he was caught by a reliable witness red-handed, with them in his possession, and at the defendant's place of business, attempting to sell them. The jury could, without doing violence to the law, believe the thief, although uncorroborated. The learned trial judge most prudently and wisely omitted no proper warning to the jury as to the caution they should observe in receiving the testimony of such a witness as McKenna. He said: "A man in McKenna's situation is to be believed with hesitation. * * * You must be on your guard against a man that has committed such an offense as McKenna did." Certainly, the defendant's rights in this regard were fully protected. In *Pease* v. *Smith, supra,* the court of appeals say: "The most the judge can do is to caution them [the jury] to weigh such testimony with care and close scrutiny. All testimony, when once admitted in the case, is, in general, for the jury to consider, whether it be that of an accomplice in crime or of a person discredited as to his general character, or not strictly regardful of the truth."

On the question of value the learned counsel for the defendant earnestly contends that there is no legal proof of the value of the plates, and that the court erred in the rule of damages stated to the jury. These are his principal contentions: The value of the plates depended upon their condition at the time of the conversion. The damaged plates had no value, except as old metal,—three or four cents a pound, as testified to by defendant. Of the 1,357 plates stolen by McKenna, according to his own testimony, only 74 were broken. He says: "I battered them myself with a hammer or ax. I know all the rest were not broken, and in good condition. I took them out of the boxes." This testimony is uncontradicted, and its weight depends entirely upon the degree of credibility placed upon McKenna's evidence. As we have already seen, the jury saw fit, under proper instructions, to give substantial credit to McKenna's testimony. No objection was made to the admissibility of any of the evidence as to value, and the only question raised is as to whether it furnished any reasonable basis for the finding of the jury. The plaintiffs called Edward Lovell, an employe of the United States Book Company, and formerly in the employ of the plaintiffs as general superintendent of the press-room, who testified that in the course of business the plates of the firm came under his inspection. He testified as follows: "I have

been in the printing and publishing business all my life. We handled a great many stereotyped plates like these in question. * * * In the course of my experience I have bought and sold a great many stereotype plates. *Question.* From your experience in the business, are you familiar with the values of stereotype plates like those in question in this action? *Answer.* Yes, sir. * * * I ought to be competent to judge what their value is. * * * A plate is never put back in the vault imperfect. These plates were in good condition. I know how many plates there were belonging to each of these volumes. *Q.* Now state to the jury and the court, from your experience in the business, and from your knowledge of the condition of these plates, what their value was when the witness McKenna testifies to having taken them. *A.* We value them at seventy-five cents a page. It makes a total value of $1,017.75." No exception was taken to the admission of this evidence, and there is an entire absence of testimony in contradiction. It is ample basis as to value upon which to rest a verdict. It is manifest that the value placed upon the plates by this witness was the actual value to the owner. The plates were adapted to the special use of printing the books, the contents of which in type form they bore upon their surface, and were not, strictly speaking, marketable property, readily salable or procurable in the market. They had a special value to the plaintiffs in the business in which they were engaged. The witness had shown himself competent to testify as to their special value, and, in our opinion, it was the correct measure of damages. "If the property have little or no marketable value, the actual value to the owner is the just rule. The jury may consider the cost of replacing the property." 11 Sedg. Dam. p. 474. "Such property, [stereotype plates,] in market, would be worth comparatively nothing, but to the owner it might be of great value; and that would be a very inequitable and harsh rule that limited his recovery against a person converting it to its market value, which would really be but little, if anything, more than the value of the material. In such cases it is held that the measure of the recovery is the fair value of such property to the plaintiff." See Wood's Mayne, Dam. p. 340. "The actual value to one who owns and has uses for them is the just rule of damages in an action against one who converts them to his own use." *Heald* v. *MacGowan,* (Com. Pl. N. Y.) 5 N. Y. Supp. 450; *Stickney* v. *Allen,* 10 Gray, 352; *Starkey* v. *Kelly,* 50 N. Y. 676; *Wehle* v. *Haviland,* 69 N. Y. 448; *Wright* v. *Bank,* 110 N. Y. 237, 18 N. E. Rep. 79. In all cases of conversion, except where punitive damages are allowable, the true rule to be adopted rests upon the fundamental theory which affords the plaintiff a just indemnity for the loss he has sustained. The market value of these plates as "old metal" is not compensation to the plaintiffs. The actual value to the plaintiffs for use in their business is the proper rule of damages. No other rule will secure to them just indemnity. The evidence warranted the jury in placing a much higher value upon the plates than the sum found by their verdict.

We can find no error in the instruction from the court. The question of value was fairly left to the jury upon the evidence, which, we have already said, was sufficient. The case is free from any exception to the admission or exclusion of evidence that demands consideration. It follows that the judgment and order appealed from must be affirmed, with costs.