TAFT v. SMITH, GRAY & CO.

(Supreme Court, Appellate Term. April 22, 1912.)

1. TROVER AND CONVERSION (§ 44*)—DAMAGES—DETERMINATION OF VALUE.
    The rule of damages for the conversion of property is its value at the time and place of the conversion, and where it has only a speculative value, the damage may be ascertained by evidence of the nature of the article, whether it can be reproduced, its utility to its owner, and, in the absence of other evidence, the owner's estimate of its value.
    [Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 260, 261; Dec. Dig. § 44.*]

2. TROVER AND CONVERSION (§ 66*)—DAMAGES—QUESTION FOR JURY.
    Where property converted is of such a nature that its value cannot be definitely ascertained, the question of estimating the value to the owner

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rests in the discretion of the jury, subject to the limitation that their verdict must not be inadequate or excessive.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 288–294; Dec. Dig. § 66.*]

3. LITERARY PROPERTY (§ 3*)—RIGHT OF PROPERTY—SUBJECT—UNPUBLISHED MANUSCRIPT.

The author or compiler of an unpublished manuscript has a property right in it, which not only attaches to the physical or corporeal substance, but includes the incorporeal right to the exclusive use of its contents.

[Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 2; Dec. Dig. § 3.*]

4. TROVER AND CONVERSION (§ 62*)—DAMAGES—EXCESSIVE.

Where a clothing salesman had collected in a book the names of people whom he had waited on for a period of 20 years and with whom he was acquainted, $500 was fair compensation for its conversion by his employer.

[Ed. Note.—For other cases, see Trover and Conversion, Dec. Dig. § 62.*]

Hotchkiss, J., dissenting.

Appeal from City Court of New York, Trial Term.

Conversion by Charles C. Taft against Smith, Gray & Co. From a judgment for plaintiff, and an order denying a motion for new trial, defendants appeal. Affirmed.

Argued January term, 1912, before SEABURY, GERARD, and HOTCHKISS, JJ.

Jones, McKinny & Steinbrink, of Brooklyn (Meier Steinbrink, of counsel), for appellants.

Gerson C. Young, of New York City, and Joseph J. Schwartz, of Brooklyn, for respondent.

SEABURY, J. I concur in the view expressed in the opinion of Mr. Justice HOTCHKISS that the proof of demand was sufficient. I do not concur in the view that the evidence of damage is insufficient to sustain the award which the jury made to the plaintiff. The manuscript "See You" book, which was the subject of the conversion, had no market or other definite provable value. It was, however, of value to the plaintiff. The fact that the value is speculative or difficult of ascertainment does not preclude a substantial recovery. The law is always adequate to meet difficult situations, and in such cases permits proof of collateral matters which tend to throw light upon the value of the thing converted, and then leaves to the good judgment of the jury the duty of estimating the sum which will constitute fair compensation. These collateral matters justify a consideration of the nature of the thing itself, whether or not it can be reproduced, and its utility to the owner, and, if the value of its use cannot be otherwise determined, the owner may give his estimate of its value to him.

[1] The general rule of damages, when property is converted, is the value of the thing converted at the time and place of the conversion, with interest. McIntyre v. Whitney, 139 App. Div. 557, 124 N. Y. Supp. 234, affirmed 201 N. Y. 526, 94 N. E. 1096. If the thing converted has no market value, the actual value to the owner

is the just and accepted rule. Lovell v. Shea, 18 N. Y. Supp. 193. Thus, where the action was for the conversion of a solicitor's docket and papers, containing evidence of bills of costs against certain parties, the measure of damage was held to be the value of the documents to the owner. Doyle v. Eccles, 17 Up. Can. C. P. 644. The same rule applies for the conversion of a set of vouchers, accompanied by an affidavit of their correctness. Drake v. Auerbach, 37 Minn. 505, 35 N. W. 367. So, also, where plaintiff sued to recover the value of sheet music, which had been annotated and transposed by the plaintiff's husband, and which the plaintiff had left in the custody of a storage warehouseman, it was held proper "to allow plaintiff to introduce evidence tending to show that the sheet music had a special value to her husband, because of annotations and transpositions inscribed thereon by him." Leoncini v. Post (Com. Pl.) 13 N. Y. Supp. 825. In an action to recover damages for the conversion of a picture, which had no market value, the court refused to disturb a judgment for the plaintiff, based on the owner's estimate of the value of the article. Frankinstein v. Thomas, 4 Daly, 256.

[2] In some cases, this value to the owner may be simply the cost of reproduction, and in such cases the cost of reproduction is the correct measure of damage to be applied. Thus, in an action for the conversion of abstracts of title and searches, the cost of procuring other similar searches is recoverable. Watson v. Cowdrey, 23 Hun, 169. The same rule was applied in an action to recover for the conversion of certain electrotype plates (Heald v. MacGowan, 5 N. Y. Supp. 450) and stereotyped book plates (Lovell v. Shea, 18 N. Y. Supp. 193). When reproduction of the thing converted is not possible and the thing itself is of such a nature that its value cannot be definitely ascertained, the question of estimating the value to the owner rests necessarily in the discretion of the jury, subject to the limitation that their verdict must not be inadequate or excessive.

[3] The plaintiff had a right of property in the "See You" manuscript. It was the product of his labor, and had never been published, and consequently the right of property existed in it. It was an unpublished manuscript, and, as such, within the protection of the law which recognizes literary property. That law includes within its protection maps, charts, musical compositions, engravings, photographs, paintings, catalogues, trade lists, and any other thing of a similar nature, regardless of its precise form. After publication the law does not protect the right of an author or compiler, except under the copyright law; but before publication the right of the producer is absolute, and the protection which the law affords ample. Jeffreys v. Boosey, 4 H. L. C. 962; Wheaton & Donaldson v. Peters, 8 Pet. 591, 657, 8 L. Ed. 1055; Palmer v. De Witt, 47 N. Y. 540, 7 Am. Rep. 480. The author or compiler of a manuscript has a property right in it. This property right not only attaches to the physical or corporeal substance which composes the manuscript, but includes the incorporeal right to the exclusive use of its contents. In Spicer v. Waters, 65 Barb. 227, the court, after stating the general rule as

to damages in conversion, points out that this rule is subject to modification in certain cases, and says that:

"When the property has no market value, such as paintings, *manuscripts*, etc., the damages are in the discretion of the jury."

In Press Pub. Co. v. Monroe, 73 Fed. 196, 19 C. C. A. 429, 51 L. R. A. 353, the plaintiff had written a poem to be delivered at the World's Columbian Exposition, and before it was published the defendant obtained a copy of it and published it in its newspaper. The publication was shown to have been made in wanton disregard of the plaintiff's rights. The plaintiff recovered a verdict for $5,000, which was affirmed on appeal; the court holding that, although there was no proof of actual damage, exemplary damages might be recovered. In Wood v. Cunard Steamship Co., 192 Fed. 293, 112 C. C. A. 551, plaintiff sued for the loss of a trunk which contained the manuscript of a manual on Greek Grammar which he had written. He was awarded $5,000 for the loss of the manuscript. On appeal the decree was modified, and the court fixed $500 as a fair award for the lost manuscript. In its opinion the court conceded that this assessment of value was, "as a jury's frequently is, somewhat arbitrary." The case arose in admiralty, and the court itself fixed the value saying:

"The case in this respect is sui generis. The lost manuscript is unique in its isolation. There is nothing with which to compare it. In these circumstances, believing that there are certain limits in each direction beyond which we should not go, we deem it for the best interests of the parties that the amount of the recovery should be fixed without further expense to the litigants, and we fix $500 as a fair award for the lost manuscript."

No definite standard can be applied in determining the value of a manuscript. Estimating the value of labor or time spent in its production furnishes no sufficient criterion of value. The plaintiff in this case produced the best proof that the nature of the case was susceptible of. He showed how he had compiled his manuscript "See You" book, the use that he made of it, and that his earning power was increased by its use. It also appeared that it could not be reproduced, and that some of his customers actually made purchases from his employers. This was all that he was required to do, and in view of the fact that the manuscript book had no market value and could not be reproduced, it furnished a sufficient basis to enable the jury to render their verdict. The book contained the names of those who entertained a kind of good will to the plaintiff, and the possession of such a list would, it seems to me, other things being equal, make him a more desirable employé for an employer who dealt with the class represented by the names inscribed in the "See You" book.

[4] The award of $500 seems to me to have been fair compensation for the plaintiff's loss, and to have been a judicious estimate of the value of this manuscript to the plaintiff.

For these reasons, the judgment should be affirmed, with costs.

GERARD, J., concurs.

HOTCHKISS, J. (dissenting). The action was for conversion. In December, 1909, plaintiff was employed by one Wolff, vice president of defendant, to serve as a clothing salesman at one of the defendant's shops in this city. He was to be paid by salary and commission. One Ryder was manager of the department in which plaintiff worked, and appears to have had general charge of the salesmen. Some weeks after he began work, plaintiff, at Ryder's request, delivered to him his "See You" book, which contained the names and addresses of over 400 former customers of plaintiff, "personal friends," "people he had waited on for years," collected by him during a period of "about 20 years" of service as salesman at other clothing establishments in this city. The book was so given to Ryder to enable defendant to send circulars to the persons whose names appeared therein, calling attention to the fact that plaintiff had entered its employ and would be glad to serve them. Circulars were sent to some of such persons, but to how many, does not appear. In the following April, plaintiff was discharged by Ryder, acting under instructions from Wolff. At this time, and afterwards, plaintiff requested Ryder to return to him his "See You" book, but was unable to obtain the same, although, on the occasion of his second demand, Ryder promised to get it and return it. Thereafter, plaintiff brought this action to recover the value of the book, and secured a verdict for $500.

The judgment is assailed on various grounds, the chief among which are: (1) Insufficiency of demand before suit; (2) errors in the admission of evidence of value, and failure to dismiss at the close of plaintiff's case for lack of sufficient evidence of value to go to the jury; and (3) for the refusal of defendant's request to direct a verdict in plaintiff's favor for nominal damages only.

I think the demand was good. Ryder was plaintiff's immediate superior, under whom he performed his services, and to whom he had delivered the book, and from whom he received his discharge. The book itself pertained to the business of Ryder's department. Under those circumstances, the presumption is justified that Ryder's agency was broad enough to receive and act upon plaintiff's demand.

The other grounds urged for reversal present more serious questions. Plaintiff was the only witness to prove value. Under defendant's objections and exceptions, he testified on direct examination as follows:

"Q. Can you state approximately the amount of trade that your book would bring in to the place you would be employed? A. The whole amount for the year? Q. With reference to the book. A. My commissions amounted to about $600 to $800 a year. Q. During the time you were employed with Smith, Gray & Co., can you state what your commissions were outside of your salary? A. From $40 to $50 per month."

Later plaintiff admitted that not all, but "most," of his commissions were earned from his "customers" (meaning those named in the book). He was then asked:

"Q. Can you state in any way how many of them *came in*? A. Most of them; I should say half of them; maybe two-thirds; I don't remember exactly."

What proportion of those who "came in" made purchases, or the amount of their purchases, was not shown. On cross-examination he admitted that he could not "specify the number or the amount of business" that had been influenced by the circulars sent to the persons named in the book. McGowan, a witness for plaintiff, testified that he was a customer of plaintiff's; that he had received one of the circulars, and had called and bought an overcoat; but the price was not shown. Another witness testified that he also was a customer of plaintiff's; that he was in defendant's store while plaintiff was working there, and had inquired for plaintiff, but did not find him. Whether his call was a social one, or on business, did not appear. This is all the testimony in the case on the question of value. I think it was both improper in character and insufficient in quality to justify the court in allowing the jury to find a verdict for more than nominal damages.

The question first quoted permitted plaintiff to estimate the value of the book by an expression of opinion as to the amount of trade it "would bring in." This was substantially the very question the jury was to determine, and under the authorities, as I show hereafter, was, under the circumstances, improper. Furthermore, the answer to the question gave no facts from which the jury could infer how much of plaintiff's yearly or monthly commissions were attributable to the opportunities afforded by the book itself, as distinguished from other means or sources. Nor did the subsequent question tend to show the amount of purchases made by those of plaintiff's customers who "came in," assuming that all, who so came, came in consequence of the circulars.

It was not shown how many of the names in the book represented customers who had died in the 20 years during which the book had been in course of compilation, or had for other reasons ceased to be subject to plaintiff's influence. No testimony was offered to show what value the book had been to plaintiff in the past, in influencing trade, or other testimony to show how far possession of the book was of value to plaintiff, or to what extent the names therein could not be reproduced from memory. All of the testimony taken together furnished insufficient evidence upon which any one could fairly base anything more than a guess as to the value of the book because of the names contained therein.

The measure of damages in actions for conversion is the value of the property at the time of conversion, with interest. Wilson v. City of Troy, 135 N. Y. 96, 104, 32 N. E. 44, 18 L. R. A. 449, 31 Am. St. Rep. 817. Where the property has no intrinsic, market, or other definite or certain value, or measure of value, resort must necessarily be had to other evidence according to the circumstances of the case. Todd v. Gamble, 148 N. Y. 382, 384, 385, 389, 390, 42 N. E. 982, 52 L. R. A. 225; Parsons v. Sutton, 66 N. Y. 92, 97, 98, 99; Wamsley v. Atlas S. S. Co., 50 App. Div. 199, 203, 63 N. Y. Supp. 761. That the value is speculative, uncertain, and difficult of proof is no ground for denying any recovery, or for limiting a recovery to nominal damages

only. Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 209, 210, 4 N. E. 264, 54 Am. Rep. 676; U. S. Trust Co. v. O'Brien, 143 N. Y. 284, 289, 38 N. E. 266; Stowell v. Greenwich Ins. Co., 20 App. Div. 188, 193, 194, 46 N. Y. Supp. 802; Bates v. Holbrook, 89 App. Div. 548, 557, 85 N. Y. Supp. 673. In such a case as that here presented, the value of the article in question, to the plaintiff, is a proper basis for determining compensatory damages. Leoncini v. Post (Com. Pl.) 13 N. Y. Supp. 825. But to justify a verdict for more than nominal damages, the evidence must afford some reasonable and proper basis for ascertaining value. In short, it must rise to the dignity of proof, and furnish elements or standards for measuring value, upon which a jury may exercise its judgment, and not be so fragmentary, vague, uncertain, or hypothetical as to render any verdict based thereon little more than a mere guess.

The foregoing observations have especial force, where, as in this case, the "circumstances" are such as to admit of evidence of value at least approximating, with some degree of completeness, the peculiar nature of the property involved, and the facts bearing upon its value to the plaintiff. In Drake v. Auerbach, 37 Minn. 505, 35 N. W. 367, involving lost vouchers for money paid, all the evidence was offered of which, in the nature of the case, the situation was susceptible. In Lovell v. Shea, 18 N. Y. Supp. 193, value was shown by expert testimony. In Frankinstein v. Thomas, 4 Daly, 256, 258, not only was there expert evidence, but the defendant, who had converted the picture, previously knew the value plaintiff had set upon it, which fact alone, in the opinion of Robinson, J., "constituted (beyond any opinion of experts as to market value) a just basis for the judgment alone." In Watson v. Cowdrey, 23 Hun, 169, "the exact cost" of reproducing the title searches was proved. In Heald v. McGowan, 5 N. Y. Supp. 450, the court said there was "proof of the cost of the plates and the cost of replacing them," to which statement the court added:

"And that the plates had a use which was a valuable one, and all proof in reference to the usefulness of the plates to the plaintiff was material and relevant."

In Doyle v. Eccles, 17 Up. Can. C. P. 644, the solicitor's docket contained evidence of plaintiff's fees and costs, the collection whereof was dependent upon possession of the docket. In Scattergood v. Wood, 14 Hun, 269, there was evidence of the cost of building a second machine similar to the one converted. In similar manner cases could be cited indefinitely.

The case of Press Publishing Co. v. Monroe, 73 Fed. 196, 19 C. C. A. 429, 51 L. R. A. 353, grew out of a violation of copyright in a poem, but the pecuniary value of the composition qua poem seems not to have been considered. In Wood v. Cunard S. S. Co., 192 Fed. 293, 112 C. C. A. 551, involving the loss of a literary manuscript, there was testimony of the time it would take the author to reproduce his work, and possibly other evidence from which value could be inferred. At least, the evidence of value was such as to lead the court to say, "We have all that a jury would have upon which to assess value," and upon this evidence, a decree of $5,000 was reduced to

$500. Leoncini v. Post (Com. Pl.) 13 N. Y. Supp. 825, involved the loss of sheet music of special value, because of annotations and transpositions noted thereon by the owner. What the evidence of value was, or its nature, is not shown by the report.

It is true that in his opinion in Spicer v. Waters, 65 Barb. 227, 235, Mr. Justice Mullen, on the authority of Sedgwick on Damages, said that, in the case of paintings, manuscripts, and similar property, having no market value, "the damages are in the discretion of the jury"; but these words cannot properly be interpreted to mean that, if the evidence is unnecessarily vague and appreciably less than the case admits of, or if insufficient to admit of the jury's using it as the basis for exercising a reasonable "discretion," as distinguished from caprice, nevertheless the evidence, such as it is, must go to the jury. If such were the rule, verdicts rendered under such circumstances would be entitled to as little respect as probably would be accorded them, because they would violate the fundamental rule that they must be founded upon competent evidence having probative force.

In the light of the foregoing authorities and principles, I think the court erred in refusing to direct a verdict for nominal damages only, as defendant requested. It was likewise reversible error for the court to admit the question which asked plaintiff to state how much trade his book "would bring in to the place you [plaintiff] would be employed." This question was asked plaintiff as a sort of expert. Assuming that such testimony from plaintiff was competent, the question itself was improper, and the answer it brought bore too seriously upon the question of damages, the principal question in the case, to be overlooked as not prejudicial. "While," as said by Brown, J., in Van Wycklen v. City of Brooklyn, 118 N. Y. 424, 429, 24 N. E. 179, 180, "it is no longer a valid objection to the expression of an opinion by a witness, that is upon the precise question which the jury are to determine, * * * evidence of that character is only allowed when, from the nature of the case, the facts cannot be stated or described to the jury, in such manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable." Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608, is ample authority to show that the ruling of the court below, now under discussion, was clearly error.

The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide the event.