**ASTROWORKS, INC., Plaintiff,**

v.

**ASTROEXHIBIT, INC. and Greg Zsidisin, Defendants.**

**Greg Zsidisin, Third Party Plaintiff,**

v.

**Samuel Liebowitz, Kenneth Gee and Howard O'Brien, Jr., Third Party Defendants.**

**No. 02 Civ.1427 SAS.**

United States District Court,
S.D. New York.

March 11, 2003.

Andrew B. Small, McCarthy, Small & Associates, P.C., New York City, for Plaintiff and Third Party Defendants.

Michael T. Stewart, Sandra Calvert Nathans, Peri & Stewart, L.L.C., New York City, for Defendants and Third Party Plaintiff.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Astroworks, Inc., is suing Astroexhibit, Inc. and its principal, Greg Zsidisin, for various claims arising from the parties' dueling websites, which each provide an "online database of space components, suppliers, service providers, industry news, conference listings and technologies available for licensing," http://www.astroexpo.com/about/about.asp. *See also* http://www.astroexhibit.com/base_pages/about.htm.[1] Zsidisin has asserted counterclaims against Astroworks and a third-party complaint against Samuel Liebowitz, Kenneth Gee and Howard O'Brien, Jr.—the officers, directors, and shareholders of Astroworks.[2]

Astroworks, Liebowitz, Gee and O'Brien (collectively, "Plaintiffs") now move to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a cause of action. Liebowitz, Gee and O'Brien also move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, claiming they are shielded from liability by Astroworks' corporate form.

I have original jurisdiction over this case because Astroworks asserts claims of trademark and copyright infringement and a related claim of unfair competition, *see* 28 U.S.C. § 1338(a) & (b), and supplemental jurisdiction over the remainder of As-

---

1. The website www.astroworks.com is not owned by Astroworks, Inc., but is owned and operated by Astro Works Corp., an Arizona-based company that manufactures and sells computer controlled telescopes frequently used for deep-space astrophotography, especially the "Centurion 18." Astro Works Corp. is not a party to this action.

2. *See* Answer to Amended Complaint, Affirmative Defenses, Counterclaim, Third Party Complaint and Jury Demand (Sept. 11, 2002). Because only the sufficiency of Zsidisin's counterclaims and third-party complaint are at issue in the instant motion, I will refer to Zsidisin's pleading as the Complaint ("Compl.").

troworks' claims and Zsidisin's Complaint, *see* 28 U.S.C. § 1367.

For the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

## I. THE COMPLAINT

The following allegations, as pled in the Complaint, are assumed to be true for the purposes of this motion.

Greg Zsidisin is an outer-space enthusiast. Compl. ¶ 9. He sat on the board of directors of the National Space Society ("NSS") and was president of its New York chapter. *Id.* Zsidisin cultivated his interest in the extraterrestrial over a period of years and often dreamed of pursuing his hobby professionally. *Id.* ¶¶ 9–10.

In 1991, Zsidisin met Liebowitz—another space hobbyist—at an NSS meeting, and over the next eight years the two met occasionally to discuss their mutual interest in space. *Id.* ¶ 11. At one such meeting, in December 1999, Zsidisin revealed to Liebowitz his desire to run a space-related business. *Id.* At that time, Zsidisin was employed by a company that designed and manufactured valves used in space technology, *id.* ¶ 10, and Liebowitz was involved in importing Japanese videotapes, *id.* ¶ 12.

Four months later, in or about March 2000, Zsidisin and Liebowitz met with Karen Lewis. *Id.* ¶ 15. At that meeting, Zsidisin revealed his idea for a web-based space-related business, and discussed with Liebowitz and Lewis the best ways to realize his vision. *Id.* Lewis—who is not a party to these proceedings[3]—suggested that Zsidisin's idea might work best if he followed a business-to-business model, rather than a business-to-consumer model, *id.* ¶ 16, which caused Zsidisin to suggest a "virtual exhibit hall and online database" that would sell space-related products and services. *Id.*

Liebowitz was excited by the prospect of implementing Zsidisin's idea, *id.* ¶ 18, and suggested that Zsidisin and Liebowitz form a company, owned 60% by Liebowitz and 40% by Zsidisin (the "Company"), *id.* ¶ 19.[4]

Liebowitz's majority ownership in the Company, notwithstanding the fact that Zsidisin conceived of the business idea, was due to his representation that he would fund the Company with $75,000 of his own money. *Id.* ¶ 20. At the time that he made these representations, Liebowitz knew them to be false but made the misrepresentations anyway to induce Zsidisin to create the Company. *Id.* ¶ 19.

In fact, Liebowitz made a number of knowingly false misrepresentations, including: that Zsidisin would receive a 40% ownership interest in the Company, that Zsidisin's idea would be protected by the Company, and that Zsidisin and Liebowitz would work together as a team. *Id.* ¶ 21. Thus, in reliance on this litany of misrepresentations, Zsidisin agreed to form the Company with Liebowitz and shared and developed his idea with others. *Id.* ¶ 22.

The arrangement seemed promising. Zsidisin and Liebowitz developed Zsidisin's idea by searching for a website developer and possible space-related companies that might be interested in using the website. *Id.* ¶ 23. For instance, they approached a prominent trade journal called Space News. *Id.* At the same time, they tried to raise more working capital. In or about May 2000, Liebowitz recruited Gee as an investor. *Id.* ¶ 24. Gee was to receive a

---

**3.** Lewis was offered an ownership position in Zsidisin and Liebowitz's venture, but declined. *Id.* ¶ 17.

**4.** It is unclear when Astroworks was actually incorporated.

5% ownership interest (taken from Liebowitz's 60%) in return for his investment and his assistance in recruiting other investors. *Id.* Zsidisin, meanwhile, was actively promoting the new business. He worked full-time for the Company, *id.* ¶ 23, traveling to trade shows at his own expense. *Id.* ¶ 25. He also contributed $10,000 of his own money to the Company, which was never reimbursed. *Id.*

Then, at some unspecified point, things began to fall apart. Gee neither contributed any money to the Company, nor recruited any investors. *Id.* ¶ 24. Liebowitz registered the internet domain name astroexpo.com—presumably the agreed-upon address for establishing the business' website—but did so in his own name. *Id.* ¶ 27. Liebowitz also caused Astroworks to obtain a copyright on the website,[5] *id.*, effectively co-opting Zsidisin's idea. Finally, Zsidisin reduced his hours to part-time and eventually withdrew from the Company altogether. *Id.* ¶ 26.

Some time later, Zsidisin formed Astroexhibit and the website www.astroexhibit.com—a "Space Industry Virtual Trade Show"—to implement his idea and to compete with www.astroexpo.com—"The Space Industry Virtual Exhibit Hall." Subsequently, Astroworks sued Astroexhibit on a variety of claims stemming from the perceived similarity between the two web sites. *See* Amended Complaint for Copyright Infringement, Trademark Infringement, Unfair Competition, Violation of Federal Trademark Dilution Statute, Common Law Trademark Violation, Unfair Business Competition and Usurpation of Trade Secrets (July 29, 2002) ("Astroworks Compl."). Zsidisin countersued Astroworks and its officers, directors and shareholders for the conduct described above. The counterclaims allege (1) fraud in the inducement, (2) conversion, (3) "minority shareholder's suit—dissolution of plaintiff," [6] (4) breach of contract, (5) breach of the covenant of good faith and fair dealing, (6) unfair competition, and (7) unjust enrichment.

Plaintiffs now move to dismiss Zsidisin's Complaint.

## II. LEGAL STANDARD

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint *only* if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (emphasis added) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, a plaintiff need only plead " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[7]

---

**5.** *See* United States Copyright No. TX–5–361–007 (for "AstroExpo.com: The Space Industry Virtual Exhibit Hall"). It is this copyright that Astroworks, in its complaint, alleges that Zsidisin infringed.

**6.** The "minority shareholder's suit" cause of action was asserted only in Zsidisin's counterclaim against Astroworks; the remaining six claims are asserted against all Plaintiffs.

**7.** Although New York substantive law governs the claims at issue here, federal procedural law is applied. "Because Rule 8(a) specifies the formal requirements of a complaint in a civil suit in the federal court, New York law is not binding. This [is] true even in a case where federal jurisdiction [is] founded on diverse citizenship." *Stirling Homex Corp. v. Homasote Co.,* 437 F.2d 87, 88 n. 2 (2d Cir. 1971) (per curiam) (discussing adequacy of pleading subject matter jurisdiction). *See also Johnson v. Hondo, Inc.,* 125 F.3d 408, 417 (7th Cir.1997) ("Even if Wisconsin does hold to a heightened pleading standard for

At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)).

The task of the court in ruling on a Rule 12(b)(6) motion is " 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Pierce v. Marano,* No. 01 Civ. 3410, 2002 WL 1858772, at *3 (S.D.N.Y. Aug. 13, 2002) (quoting *Saunders v. Coughlin,* No. 92 Civ. 4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

malicious prosecution claims (an issue we need not decide), it is rudimentary that pleading requirements in the federal courts 'are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.' ") (quoting 5 Wright & Miller, Federal Practice and Procedure § 1204); *see generally Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (procedural requirements in federal court are governed by federal procedural law). A federal court may not impose a heightened pleading standard—under any circumstance—unless that heightened standard is embodied in the Rules or enacted by Congress. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168–69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Thus, Zsidisin must meet the relatively relaxed notice pleading standards of the Federal

## III. DISCUSSION

Plaintiffs now move to dismiss the Complaint, with the exception of the counterclaims against Astroworks for breach of contract (Claim IV) and breach of the covenant of good faith and fair dealing (Claim V).

### A. The Complaint Adequately Alleges Causes of Action Against Liebowitz, Gee and O'Brien

■ As a threshold matter, third-party defendants Liebowitz, Gee and O'Brien move to dismiss the entire third-party complaint for lack of subject matter jurisdiction, *see* Fed.R.Civ.P. 12(b)(1). In particular, they argue that Zsidisin has impermissibly attempted to "pierce the corporate veil" of Astroworks, *i.e.,* to hold the corporation's officers, directors and shareholders *personally* liable for the corporation's alleged misconduct.[8]

In order to plead jurisdiction, a complaint must merely set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the

Rules, not the more stringent pleading standards of the New York Civil Practice Law and Rules. *Compare* Fed.R.Civ.P. 8 (requiring a "short and plain statement of the claim") *with* N.Y. C.P.L.R. 3013 (McKinney's 2003) ("Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.").

8. "Generally, [ ] piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. New York State Dep't of Taxation and Fin.,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993).

claim needs no new grounds of jurisdiction to support it." Fed.R.Civ.P. 8(a).[9]

██ Plaintiffs rightly note that under New York law, "individuals [are allowed] to incorporate for the very purpose of avoiding personal liability," *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979), and "New York courts are reluctant to disregard the corporate entity," *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir.1989). *See also Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 163–64, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980). *Gartner* and *Wrigley*—the only cases cited by Plaintiffs—therefore reversed district courts that had imposed personal liability on the principals of the defendant corporations. Both cases, however, were appeals from verdicts and turned on the *evidence,* or lack of evidence, supporting plaintiffs' efforts to pierce the corporate veil.

Here, Zsidisin has *alleged* that Liebowitz "utilized the corporate form of and controls the plaintiff, utilizing same as his alter-ego, shield and as a subterfuge to engage in fraud, conversion and other un-

lawful acts [sic]," Compl. ¶ 29, and that Liebowitz, Gee and O'Brien all engaged in misconduct by exploiting Astroworks' corporate form, *see id.* ¶¶ 10, 24–27, 30. These allegations are sufficient to inform Liebowitz, Gee and O'Brien of the purported basis for their personal liability, and thus to survive a motion to dismiss. *See, e.g., In re InSITE Services Corp.*, 287 B.R. 79, 95–98 (Bankr.S.D.N.Y.2002) (denying motion to dismiss on veil-piercing).

**B. The Complaint Is Well–Pled**

Having determined that Zsidisin may pursue his actions against all Plaintiffs, I now turn to the Complaint's substantive allegations. Plaintiffs raise a litany of arguments that may eventually prove to be dispositive, but which are unavailing at the motion to dismiss stage.

**1. Fraudulent Inducement**

Plaintiffs raise two arguments in favor of dismissing the fraudulent inducement claims: (1) that Zsidisin has improperly converted an action for breach of contract into an action for fraud;[10] and (2) that

9. It is somewhat unclear, as a matter of law, whether an impermissible attempt to pierce the corporate veil divests a court of subject matter jurisdiction. The Second Circuit has held that "if there [is] no ... basis for piercing the corporate veil, [a] complaint [is] subject to dismissal under Rule 12(b)(6) for failure to state a claim on which relief [may] be granted." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717–18 (2d Cir. 1974) (per curiam). In other words, the Second Circuit holds that piercing the corporate veil is asserted as a claim. But the New York Court of Appeals has explained that "[a]n attempt ... to pierce the corporate veil *does not* constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners," *Morris*, 82 N.Y.2d at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (emphasis added), suggesting that pierc-

ing the corporate veil may be a jurisdictional predicate, as Plaintiffs suggest.

In any case, the question is largely academic. At the motion to dismiss stage, the standard for alleging both jurisdiction and claims is the same: a complaint need only set forth a "short and plain statement." Fed. R.Civ.P. 8(a). Whether subsequent attacks on Zsidisin's attempt to pierce the corporate veil are styled as summary judgment motions or motions to dismiss are irrelevant.

10. Although this argument is not clearly articulated, I am assuming that this is what Plaintiffs intended because they cite cases that suggest this argument. In fact, Plaintiffs articulate their perceived grounds for dismissal as follows: "Counterclaims Fourth and Fifth allege breach of contract and contractual duties.... Breach of contract allegations inherently *admit* the existence of a valid contract. However, it is black letter law that

Zsidisin has not sufficiently pled a claim of fraud under the Rules.

### a. The Contract and Fraud Claims Are Distinct

▮ An action for fraud "cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations." *PI, Inc. v. Quality Prods., Inc.*, 907 F.Supp. 752, 761 (S.D.N.Y.1995). Thus, "[i]t is well settled under New York law that a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." *International Cabletel Inc. v. Le Groupe Videotron Ltee*, 978 F.Supp. 483, 486 (S.D.N.Y.1997) (quotation marks and citations omitted).

▮ However, it is also well settled that an "action for fraud can be maintained on the basis of allegations that a party made a collateral or extraneous misrepresentation that served as an inducement to the contract." *PI*, 907 F.Supp. at 761; *see also International Cabletel*, 978 F.Supp. at 487 (describing the "collateral or extraneous promise" rule as "widely adopted by state and federal courts"). Accordingly, al-

though a plaintiff cannot disguise a breach of contract claim as a fraud claim, "a valid fraud claim may be premised on misrepresentations that were made before the formation of the contract and that induced the plaintiff to enter the contract." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994).

▮ The critical question, then, is whether Zsidisin has alleged misrepresentations that were "collateral or extraneous" to his agreement with Liebowitz.[11] In his breach of contract claim, Zsidisin alleges that he had an agreement with Liebowitz "whereby he was to receive forty (40%) of the stock of the New Company together with his pro rata share of benefits derived from the success of said company." Compl. ¶ 42. It was this agreement—and this agreement alone—that Plaintiffs allegedly breached. *Id.* ¶ 43.

In contrast, Zsidisin identifies four misrepresentations in his fraudulent inducement claim:

(a) that Mr. Zsidisin had a forty (40%) [sic] ownership interest in the New Company and that he would cause the issuance of stock in that ownership amount; (b) that the Zsidisin Idea would be protected by its development in and through the New Company; (c) that they would work together as a team;

---

Defendants cannot allege that there *was a contract* and claim that there *was no contract* by alleging fraud in the inducement within the same pleadings." Pl. Mem. at 6 (emphasis added).

This is a losing argument. It is black letter law that a complaint *may* plead in the alternative. *See* Fed.R.Civ.P. 8(e)(2). A complaint may not allege inconsistent *facts—e.g.,* whether there was an agreement—because facts are binding judicial admissions. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985). But legal allegations—*e.g.,* whether that agreement amounted to a "contract"—may be pled in the alternative. Indeed, legal theories may be pled in the alternative even if the alternatives

are wholly contradictory. *See, e.g., Aiken v. Nixon*, 236 F.Supp.2d 211, 223 (N.D.N.Y. 2002).

In a complaint, "[f]actual allegations alone are what matters," and what determine whether a pleader has made a binding admission. *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir.1988) (en banc).

**11.** Whether a promise is collateral or extraneous to an agreement depends entirely on the contours of the agreement. Where the agreement is not reduced to writing, there may be some dispute about the essential elements of the agreement. But, for purposes of deciding this motion, Zsidisin's recitation of the contractual terms is deemed to be true.

and (d) that Liebowitz was committed to fund the New Company in an amount of at least US$ 75,000.00.

*Id.* ¶ 31. While the first alleged misrepresentation duplicates one of the essential terms of the agreement—and thus cannot form the basis for a fraudulent inducement claim—the last three do not. The representations that Liebowitz and the company would protect Zsidisin's idea, and that Zsidisin would be included in the development of his idea, are just the sort of promises that appear to be collateral to the central agreement.

At this early stage, it is impossible to know which promises comprised the agreement and which were collateral. Zsidisin has *alleged* promises that *may* have been collateral. That being so, there is no basis to dismiss the claim. If discovery reveals that the agreement between Zsidisin and Liebowitz included all of the promises that Zsidisin alleges in his fraud claim, then the fraud claim will be dismissed at summary judgment.

### b. The Complaint Pleads Fraud with Particularity

In order to *prove* fraudulent inducement under New York law, Zsidisin will have to show "a false representation of a material fact [made] with scienter [and] reliance thereon by defendant to its detriment." *National Union Fire Ins. Co. of Pittsburgh v. Worley*, 257 A.D.2d 228, 233, 690 N.Y.S.2d 57 (1st Dep't 1999). *See also Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995). In order to

plead fraud, however, Zsidisin need only comply with the Federal Rules, in particular Rule 9(b): "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The Second Circuit has explained its interpretation of Rule 9(b) as follows:

> To pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. Although scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a strong inference of fraudulent intent.

*Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir.1990) (quotation marks and citations omitted). A "strong inference of fraudulent intent," in turn, can be pleaded in one of two ways:

> First, the plaintiff may allege a motive for committing fraud and a clear opportunity for doing so. Second, where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir.1995) (citations, quotation marks, and alterations omitted).[12]

---

12. Although this recitation of the pleading standard for scienter is most familiar in the context of securities fraud, *see, e.g., Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), it applies with equal force whenever fraudulent intent must be pleaded under Rule 9(b), *see, e.g., Ouaknine*, 897 F.2d at 79–80.

Pleading fraudulent intent is one instance in which the Federal Rules—at least, as interpreted by the Second Circuit—require a significantly higher pleading bar than do the Civil Practice Law and Rules. *See, e.g., CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 285, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987) ("In order to state a cause of action for

■ The Complaint plainly meets this standard. Zsidisin has alleged four misrepresentations and has explained their content, who made them (Liebowitz), when they were made (at the March 2000 meeting), where they were made (at a restaurant, with Karen Lewis present), and why they were made (to induce Zsidisin to form a company with Liebowitz). *See* Compl. ¶¶ 15–22, 30. He has alleged Liebowitz's state of mind generally, *see id.* ¶ 31 ("The aforesaid statements and representations made by Liebowitz were false and were made with the intent that Mr. Zsidisin rely thereon."), and he has identified a motive and opportunity to commit fraud (taking advantage of both Zsidisin's lack of finances and his exuberance for all things space-related, *see id.* ¶¶ 9, 20, in order to obtain Zsidisin's business concept and his aid in developing it, *see id.* ¶¶ 22, 23). This is all that Rule 9(b) requires.

## 2. Conversion

■ Plaintiffs argue that Zsidisin's conversion claim is insufficient for two reasons: (1) that a breach of contract claim does not give rise to a tort in the absence of some other wrongdoing; and (2) that intellectual property cannot be converted as a matter of law. Both of these arguments are without merit.

Zsidisin plainly alleges wrongdoing that goes beyond breach of contract. Zsidisin alleges that Plaintiffs made fraudulent misrepresentations and wrongfully appropriated his idea for a space-related business-to-business website. This sort of

misconduct is the essence of conversion: "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 774 N.E.2d 702 (2002).

■ Moreover, the "goods" converted may include intellectual property. Although an idea alone cannot be converted, the "tangible expression or implementation of that idea" can be. *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 864, 521 N.Y.S.2d 917 (4th Dep't 1987). *See also Phansalkar v. Andersen Weinroth & Co., L.P.*, 175 F.Supp.2d 635, 639–40 (S.D.N.Y. 2001). While Plaintiffs could not have converted Zsidisin's idea as a matter of law, they could have converted that idea reduced to practice, *i.e.*, the website. Thus, Zsidisin alleges that Plaintiffs converted "the Zsidisin Idea *and* all related intellectual property," which presumably includes the only intellectual property at issue in this suit, the copyrighted and trademarked website. *See* Compl. ¶ 34 (emphasis added).

Whether Zsidisin will ultimately prevail on this claim turns on the extent to which Zsidisin developed his idea and had an interest in the disputed intellectual property. But the fact that he *may* have developed an early version of the website is sufficient to defeat a motion to dismiss.[13]

## 3. Minority Shareholder's Suit

Zsidisin also asserts a claim entitled "Minority Shareholder's Suit—Dissolution

---

common-law fraud, it is sufficient for plaintiff to allege that defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged.") (quotation marks and citations omitted). *But see Atla–Medine v. Crompton Corp.*, No. 00 Civ. 5901, 2001 WL 170666, at *5 (S.D.N.Y. Feb. 21, 2001) (imposing the more lenient pleading standard of

*CPC* in a common law fraud action in federal court).

**13.** Zsidisin also asserts conversion of his ownership interest in the company. That conversion, however, is duplicative of the breach of contract claim and does not allege any additional wrongdoing. The proper remedy for the denial of Zsidisin's 40% ownership interest is contract damages.

of Plaintiff." Compl. ¶¶ 36–40. It is wholly unclear from the pleadings, however, what this means. Zsidisin cites absolutely no cases or statutes in his brief, nor does he allege any additional facts in the Complaint, that even hint at his intended cause of action.

▮ Although I am mindful that "[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim," *Albert*, 851 F.2d at 571 n. 3, "[e]ven under the liberal Federal Rules of Civil Procedure, there is a limit to how much a court may be called upon to divine in assessing the sufficiency of the complaint before it, particularly when the plaintiff is represented by counsel." *Heart Disease Research Found. v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir.1972). The "minority shareholder's suit—dissolution of plaintiff" claim is therefore dismissed with leave to replead.[14]

### 4. Unfair Competition

▮ "The central principle underlying a claim for unfair competition under New York law is that one may not misappropriate the results of the labor, skill, and

expenditures of another" in bad faith. *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F.Supp.2d 492, 500 (S.D.N.Y.2002) (citations omitted). Although unfair competition may take many forms, *see National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir.1997), the pivotal question is always the same: whether the conduct complained of is "fair or unfair." *Cigogne, Inc. v. Luxury Trading Corp.*, 13 A.D.2d 928, 929, 216 N.Y.S.2d 558 (1st Dep't 1961) (per curiam).

Under this standard, Zsidisin has plainly alleged unfair competition. He alleges that Astroworks directly exploited his idea, *see* Compl. ¶ 55, which was "confidential and proprietary" and learned only during the course of Zsidisin's involvement with Astroworks, *id.* ¶ 53. Whether or not these ideas were proprietary, whether Liebowitz actually promised to protect Zsidisin's interest in the idea, and whether Astroworks' exploitation of Zsidisin's idea is wrongful must all be determined before any relief is awarded. But, assuming Zsidisin's allegations to be true, he has adequately *pled* a claim of unfair competition. Allegations that Astroworks is competing against Zsidisin unfairly by retaining the

---

**14.** Plaintiffs seem to suggest, by the cases they cite, that Zsidisin's cause of action arises under section 1104–a of New York's Business Corporation Law. *See* Pl. Mem. at 10 (citing *Friedman v. Revenue Mgmt. of New York, Inc.*, 839 F.Supp. 203 (S.D.N.Y.1993), and *Codos v. National Diagnostic Corp.*, 711 F.Supp. 75 (E.D.N.Y.1989)). But that statute is not at issue here for at least two reasons. *First*, Zsidisin seemingly disclaims reliance on that section by requesting alternate remedies to dissolution, when the statute only authorizes dissolution. *See* Zsidisin Mem. at 26. *Second*, Astroworks is a Delaware corporation, *see* Compl. ¶ 3, and as such can only be dissolved under the laws of Delaware. *See Warde–McCann v. Commex, Ltd.*, 135 A.D.2d 541, 542, 522 N.Y.S.2d 19 (2d Dep't 1987) (dismissing action brought under N.Y. Bus. Corp. Law § 1104–a to dismiss a Delaware corporation).

In any case, even if Zsidisin had proceeded under section 1104–a, it is doubtful that this Court would have been able to hear that claim. *See, e.g., Friedman*, 839 F.Supp. at 205 ("To grant an order to dissolve a New York corporation, I would be using a power not granted to me as well as usurping a power that rightfully belongs to the State of New York."); *Codos*, 711 F.Supp. at 77 (holding that, absent statutory authority, a federal court has no equitable power to dissolve a corporation, and that section 1104–a does not confer such authority). *But see In re English Seafood (USA) Inc.*, 743 F.Supp. 281, 286 (D.Del.1990) (holding that "federal courts do have equity powers to dissolve corporations created under the laws of Delaware, and thus we do have subject matter jurisdiction of this dispute").

website that is, by all rights, his intellectual property exemplify just the sort of "commercial immorality," *Demetriades v. Kaufmann,* 698 F.Supp. 521, 525 (S.D.N.Y. 1988), that is the touchstone of unfair competition.

Plaintiffs, however, insist that "in order [for Zsidisin] to receive relief for unfair competition, the ordinary or common buyer, exercising the care of a reasonably prudent person, must be deceived." Pl. Mem. at 11 (citing *Fawcett Pub., Inc. v. Popular Mechanics Co.,* 80 F.2d 194 (3d Cir.1935)). While this principle is still good law, it represents only one course of conduct, among many, that can be described as "unfair competition." [15] The theory of unfair competition stated in *Fawcett* is simply not the theory that Zsidisin pleads. Rather, Zsidisin alleges that Plaintiffs misappropriated—in bad faith—his "labor, skill and expenditures" for their own (unfair) commercial advantage. *See* Compl. ¶¶ 49–56. Plaintiffs may not rewrite Zsidisin's Complaint and then attempt to discredit that fictitious pleading;

they "must take the Complaint[ ] as [it is] written." *In re Initial Pub. Offering Sec. Litig.,* 241 F.Supp.2d 281, 332 (S.D.N.Y. 2003). And as it is written, Zsidisin adequately plead unfair competition.[16]

### 5. Unjust Enrichment

 Finally, Plaintiffs assert that a breach of contract claim and an unjust enrichment claim are mutually exclusive. Plaintiffs are correct insofar as it is impossible to *recover* on both contract and quasi-contract grounds.

> The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A "quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment.

*Clark–Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653,

---

**15.** Plaintiffs may be interested to know that the rule explained in *Fawcett* was codified by Congress as part of the Lanham Act, fifty-seven years ago. *See* 15 U.S.C. § 1125(a). So-called palming-off "occurs where a company sells its goods or services under the pretense that they are the goods or services of another," *DaimlerChrysler AG v. Bloom,* 315 F.3d 932, 937 (8th Cir.2003), and requires consumer confusion, *see Softel, Inc. v. Dragon Med. & Scientific Communications., Inc.,* 118 F.3d 955, 970 (2d Cir.1997) (listing elements of palming-off claim).

**16.** Moreover, Plaintiffs misapprehend the holding of the only case that they cite. The *Fawcett* court held that the "essence [of unfair competition] consists in the sale of the goods of one manufacturer or vendor for those of another or under such conditions as will lead the purchaser to think that they are the goods of the other." 80 F.2d at 198 (citing *Sears, Roebuck & Co. v. Elliott Varnish Co.,* 232 F. 588, 590 (7th Cir.1916)). The "goods" here

are the parties' websites. The deception that *Fawcett* requires, therefore, is that the public would be deceived into thinking that Plaintiffs' website is the same as Zsidisin's.

But Plaintiffs themselves make that allegation. *See* Astroworks Compl. ¶ 48 ("Defendants' unauthorized use of the Plaintiff's mark has created and creates a likelihood of confusion, mistake or *deception* as to the affiliation, connection or association of Defendants with AstroExpo.") (emphasis added). Indeed, it is integral to *Plaintiffs'* claims of copyright and trademark infringement and unfair competition. *See also GTFM, Inc. v. Solid Clothing, Inc.,* 215 F.Supp.2d 273, 300 (S.D.N.Y.2002) ("Under New York common law, 'an action for [trademark] infringement as well as an action for unfair competition both require a showing that the public is likely to confuse the defendant's product or service with that of the plaintiff.'") (alteration in original) (quoting *Allied Maint. Corp. v. Allied Mech. Trades, Inc.,* 42 N.Y.2d 538, 543, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977)).

516 N.E.2d 190 (1987) (citations omitted). Plaintiffs do not allege that the parties executed a written contract. And whether the agreement between Zsidisin and Liebowitz amounted to an express agreement, *i.e.*, an oral contract, is a question that cannot be resolved without additional discovery. If the agreement amounted to a contract, then Zsidisin's remedy will be for breach; if the agreement did not rise to the level of a contract, then Zsidisin's remedy will be for unjust enrichment. But the fact that he may only *recover* on one claim certainly does not preclude Zsidisin from *pleading* both.[17] *See* Fed.R.Civ.P. 8(e)(2); *see also MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 216 F.Supp.2d 251, 261 (S.D.N.Y.2002).

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion to dismiss is granted in part and denied in part. In particular, the claim for "minority shareholder's suit—dissolution of plaintiff" is dismissed without prejudice; the motion is otherwise denied. A conference is scheduled for March 26, 2003, at 4:30 p.m.

---

**17.** To plead a claim of unjust enrichment, a Complaint needs merely to allege "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir.2001) (citations omitted). Zsidisin has met this minimal burden. *See* Compl. ¶¶ 57–60.