OPINION OF THE COURT
Herman Cahn, J.
*590 This is an action for damages arising out of defendant Corcoran Group’s termination of its business relationship with plaintiff. Defendants are alleged to have wrongfully excluded plaintiff from various lists that she allegedly maintained on defendants’ computer after the termination. They move (sequence No. 003) for summary judgment dismissing the second amended complaint (CPLR 3212).
The first cause of action asserts that a computerized list prepared by plaintiff and maintained on the computer furnished to her by defendants was converted. The issue of whether a computerized list can be converted is a new one in our law. The court holds that the cause of action for conversion will lie.
Facts
Plaintiff is a real estate broker who was retained by defendant Corcoran Group in 1996 as an “independent contractor real estate agent” (Hall affidavit It 2). Defendant Tresa Hall is Corcoran’s executive vice-president and sales manager.
Plaintiff was not a salaried employee, but received a share of the commissions on matters she worked on.
Corcoran provided plaintiff with an office equipped with essentials such as a computer and telephone. The amended complaint alleges (11 7) that, over the course of her five-year tenure, plaintiff maintained computer records of “all of the real estate deals she had participated in over 14 years,” i.e., prior to, and independent of, her association with Corcoran, as well as those she worked on while at Corcoran. The amended complaint further alleges (11 8) that, during that tenure, plaintiff also maintained a hard copy, handwritten, list of “380 individuals and companies, including phone numbers, fax numbers and addresses of people she contacted to sell real estate to.” During that tenure, plaintiff received awards from Corcoran in 1999 and 2001 in recognition of her generation of over $2,000,000,000 in annual sales volume for each of those years (Viuker affidavit, exhibit G).
On March 18, 2002, during a meeting conducted in Hall’s office, Hall terminated plaintiff’s contract with Corcoran. The amended complaint alleges that when plaintiff returned to her office to collect her belongings, she discovered that her computer access code had been changed, and her hard copy list of client contacts was taken. Such deprivation is alleged to continue until the present time, despite plaintiffs demands for the return of her computerized and handwritten deal and client lists.
*591 The amended complaint seeks $3,000,000 in damages, asserting causes of action for conversion (first cause of action), intentional infliction of emotional distress (second), breach of bailment (third), misappropriation of proprietary information (fourth), and interference with prospective business relations (fifth).
Discussion
Summary judgment may only be granted if the movant is entitled to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issue of fact (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]; Zuckerman v City of New York, 49 NY2d 557 [1980]).
Conversion (First Cause of Action)
“The tort of conversion is established when one who owns and has the right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner” (Republic of Haiti v Duvalier, 211 AD2d 379, 384 [1st Dept 1995]). The history of the application of this particular common-law cause of action— “conversion”—has always centered exclusively on the physical theft of specific, identifiable, corporeal, tangible, personal property, in its most rudimentary sense (e.g., Comprehensive Community Dev. Corp. v Lehach, 223 AD2d 399 [1st Dept 1996] [medical files]; Warner v Village of Chatham, 194 AD2d 980 [3d Dept 1993] [automobiles]; Wallingford v Kaiser, 110 App Div 503 [4th Dept 1906] [animals]; see also, Manufacturers Hanover Trust Co. v Chemical Bank, 160 AD2d 113 [1st Dept 1990] [specifically identifiable, segregated, funds], lv denied 77 NY2d 803 [1991]).[1]
By contrast, as the concept of property expands to the less tangible—such as economic rights and interests—courts have held that the usurpation of such interests is actionable under causes of action other than “conversion,” which may entail added elements of proof (e.g., MBF Clearing Corp. v Shine, 212 AD2d 478 [1st Dept 1995] [wrongful diversion of trade orders to brokers other than plaintiff]; Roemer & Featherstonhaugh P.C. v Featherstonhaugh, 267 AD2d 697 [3d Dept 1999], lv denied 95 NY2d 758 [2000] [wrongful usurpation of economic interests such as stock options and business opportunities]).
*592 There can be no doubt that plaintiffs handwritten record of real estate contacts is, by virtue of its physical nature, susceptible to conversion, and, thus, may form the basis for such a cause of action. The theory of damages for conversion is compensation for the value of the item taken, if no longer physically retrievable (Restatement [Second] of Torts § 225). Plaintiff has alleged the elements of a conversion, to wit, defendants’ wrongful taking of her handwritten list, to her exclusion. Therefore, the first cause of action is easily sustainable as to that writing.
The status of plaintiffs computerized lists, on the other hand, entails further analysis. While the handwritten list is a “literal” document, the computerized one is—to coin relevant jargon— “virtual.” Virtual, though it may be, it can undeniably transform to literal form by the mere expedient of a printing key function. The question is, does the common-law tort of conversion become an extinct vestige of the past as to documents maintained on a computer, merely because traditional definitions of documents evolve over time to the point where wood pulp is no longer the only required medium upon which to record data? Does not the concept of conversion, i.e., wrongful exclusionary retention of an owner’s physical property, apply to an electronic record created by a plaintiff and maintained electronically as much as it does to a paper record so created? The court today holds that it does.
The tort of conversion has its origins in the ancient common-law writ of trover, created “as a remedy against the finder of lost goods who refused to return them” (Restatement, supra, § 242, Comment d). Because of that origin, the tort of conversion[2] was limited to property which could be lost and found, i.e., tangible personalty, as opposed to real property (id.). As the nature of personal property evolved to the point where tangible documents represented highly valuable rights, such as promissory notes, stock certificates, insurance policies, and bankbooks, the tort of conversion was expanded by common-law courts to include such documents within its definitional scope, despite *593 their intangible aspects, which, invariably, are the primary components of the document’s value (id., Comment b).[3]
The Court of Appeals took part in the evolution of the common-law cause of conversion when it applied the tort to the theft of stock in Hartford Acc. & Indem. Co. v Walston & Co. (21 NY2d 219 [1967], adhered to on rearg 22 NY2d 672 [1968]). The Court declared that “ ‘[a]n owner does not forfeit his ownership for failure to take good care’ of intangible personal property ‘any more than he forfeits it for failure to take good care of his watch.’ ” (Id. at 221, quoting People’s Trust Co. v Smith, 215 NY 488, 493 [1915].) There should be no reason why that practical view should not apply equally to the present generation of documents—electronic documents—which are just as vulnerable to theft and wrongful transfer as paper documents, if, indeed, not even more so.
Other courts have grappled with the need to modernize the law of conversion in order to afford plaintiffs a just civil remedy in response to outright theft.
In Kremen v Cohen (337 F3d 1024 [9th Cir 2003]), the defendant was accused of stealing plaintiffs Internet domain name by falsely informing the Internet domain name registrar that the plaintiff abandoned the name, and then taking it for himself. The court reversed a district court dismissal of plaintiff’s conversion claim on intangibility grounds, stating that “[t]his rationale derives from a distinction tort law once drew between tangible and intangible property: Conversion was originally a remedy for the wrongful taking of another’s lost goods, so it applied only to tangible property. Virtually every jurisdiction, however, has discarded this rigid limitation to some degree.” (Id. at 1030 [citation omitted].) The court concluded that “Kremen’s domain name falls easily within this class of property . . . That it is stored in electronic form rather than on ink and paper is immaterial.” (Id. at 1033-1034.)[4]
*594 In a closer case, Astroworks, Inc. v Astroexhibit, Inc. (257 F Supp 2d 609 [SD NY 2003, Scheindlin, J.]), the plaintiff’s principal, in anticipation of a possible joint venture, became privy to the ideas of defendant’s principal for an Internet, Web-based, business. The plaintiff sued the defendant for “converting” those ideas for its own gain. As in the present case, dismissal was sought on intangible property grounds. The court upheld the claim, stating that “[t]his sort of misconduct is the essence of conversion: ‘the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner’s rights.’ State v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 774 N.E.2d 702 (2002).” (257 F Supp 2d at 618.) The court added that:
“Although an idea alone cannot be converted, the ‘tangible expression or implementation of that idea’ can be. Matzan v. Eastman Kodak Co., 134 A.D.2d 863, 864, 521 N.Y.S.2d 917 (4th Dep’t 1987) . . . While Plaintiffs could not have converted Zsidisin’s idea as a matter of law, they could have converted that idea reduced to practice, i.e., the website.” (Id.)
The court, therefore, finds that plaintiffs computerized client/ investor list is convertible property. This conclusion does not diminish plaintiffs burden to prove the existence of all the elements necessary to sustain a claim for conversion applicable in a case involving nonelectronic documents and things.
Finally, defendants will not be allowed to avoid the consequence of the alleged theft of plaintiffs lists merely by suggesting that she cannot claim as hers the note paper or computer which were furnished by defendants to her, and upon which she recorded the client data. As there is no dispute as to plaintiffs status as an independent contractor, working with Corcoran— and not an employee of Corcoran—the office supplies and equipment furnished by Corcoran in facilitation of their commission sharing arrangement with plaintiff must be viewed as being in the nature of items licensed to plaintiff in facilitation of her in *595 dependent contract with Corcoran (see, Rawson v Tully, 60 AD2d 717 [3d Dept 1977] [independent status recognized notwithstanding provision of office space and secretary]; accord, Charles E. Willis & Co. v Levine, 37 AD2d 869, 870 [3d Dept 1971]).[5]
Plaintiff had an “access code” which presumably protected the materials she put on her computer from being read by, or forwarded to, others, without her consent. This would be similar to a paper list being kept in plaintiffs desk or file cabinet, furnished to her by Corcoran. Either the computer or the desk or file cabinet could, in final analysis, be opened over plaintiffs objection by someone who had another key or a record of the access code.
Accordingly, the motion is denied as to the first cause of action.
Intentional Infliction of Emotional Distress (Second Cause of Action)
The second cause of action seeks damages for intentional infliction of emotional distress relating, primarily, to undue pressure which Hall is alleged to have exerted on plaintiff, to testify falsely in a lawsuit brought against Corcoran (Shmueli affidavit 1I1Í 55-56).[6]
Plaintiff also alleges a variety of other actions, giving rise to emotional distress, as follows: Hall refused to allow plaintiff to move her office to another floor; Hall deducted $2,000 from plaintiffs commissions to pay for legal representation in a lawsuit against plaintiff and Corcoran; an unknown Corcoran employee continuously interrupted plaintiffs telephone line; Hall refused to promote plaintiff; and Hall discontinued plaintiffs assistant in 2000.
“The tort [of intentional infliction of emotional distress] has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.” (Howell v New York Post Co., 81 NY2d 115, 121 [1993].)
*596 While most of plaintiffs aforesaid grievances may fairly be characterized as vicissitudes of workaday life, which would not be characterized as “outrageous,” and therefore would not sustain the cause of action, the allegation of pressure to suborn perjury, however, may reasonably be said to fall into this category. Plaintiff, further, attests that she requires, and has received, medication to alleviate “severe stress,” “panic attack,” and “sickness” occasioned by Hall’s alleged conduct (Shmueli affidavit 1i 56). The infliction of emotional distress may be actionable if it is shown to have caused physical harm (Perry-Rogers v Obasaju, 282 AD2d 231 [1st Dept 2001], lv dismissed 96 NY2d 936 [2001]).
Whether plaintiff can ultimately prove the conduct, i.e., the pressure for her to perjure herself, its outrageousness, and its alleged effects, are issues to be decided at trial—not on a motion for summary judgment.
Accordingly, the motion for summary judgment dismissing the second cause of action for intentional infliction of emotional distress is denied, except that all of the specific claims other than that plaintiff was pressured to perjure herself are stricken. Plaintiff shall serve an amended complaint limiting this cause of action as herein set forth.
Bailment (Third Cause of Action)
Plaintiff contends that defendants’ alleged taking of her computerized and hard copy client lists constitutes a breach of bailment of those materials with defendants.
“It is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment” (Martin v Briggs, 235 AD2d 192, 197 [1st Dept 1997] [emphasis added]; see also, Pivar v Graduate School of Figurative Art of N.Y. Academy of Art, 290 AD2d 212, 213 [1st Dept 2002] [bailment is a thing “intrusted to a person by the owner”]).
To be sure, the primary theory of the complaint appears to be one of conversion (o*, as discussed below, misappropriation of proprietary information), whereby defendants’ initial possession of plaintiffs client lists, through freezing her out of her computer and stealing her handwritten list, was never lawful; but instead, a surreptitious taking of her property while lured away by Hall. This factual theory is inconsistent with bailment theory, which is premised on lawful possession in the first instance.
However, our modern practice of pleading permits alternative assertion of inconsistent causes of action (CPLR 3014). Plaintiff, *597 thus, alternatively alleges in her third cause of action that her computer and handwritten entries on equipment and material supplied by Corcoran “constituted a bailment” for a common business purpose, and that defendants’ failure to return them at termination constituted a breach thereof (complaint 1Í1Í 30-31). Giving plaintiffs assertions every favorable inference in opposition to summary judgment (Myers v Fir Cab Corp., 64 NY2d 806 [1985]; Martin v Briggs, supra), she has adequately alleged that she entrusted her client lists to defendants for as long as they were affiliated in the real estate brokerage industry. Defendants’ failure to return them upon termination of that relationship is, therefore, adequately alleged to be a breach of the bailment.
Defendants present nothing of consequence in opposition to this cause of action. Accordingly, the motion for summary judgment dismissing the third cause of action for breach of bailment is denied.
Misappropriation of Proprietary Information (Fourth Cause of Action)
Plaintiff alleges that the computerized and hard copy lists, which she compiled on her own both prior and during her independent contractor relationship with Corcoran, are her own proprietary, confidential, information; and that defendants misappropriated the information when they took the lists.
Defendants maintain that the lists, containing names, addresses, and telephone numbers of prior and prospective real estate purchasers, are not afforded legal protection, as “trade secrets.” They further assert that plaintiff did nothing to maintain the secrecy of the lists.
Business information is entitled to trade secret protection if it consists of “any formula, pattern, device or compilation of information which is used in one’s business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it” (Ashland Mgt. v Janien, 82 NY2d 395, 407 [1993], quoting Restatement [Second] of Torts § 757, comment b; see also, id., for additional relevant factors).
Plaintiff, whose assertions are given every favorable inference in opposition to a motion for summary judgment {Myers, supra; Martin, supra), asserts that she expended considerable time, effort, and cost in compiling her client/investor lists. Where, as alleged here, customer lists require extraordinary effort to compile, such lists may, in a proper case, be afforded trade secret protection (Leo Silfen, Inc. v Cream, 29 NY2d 387 392 [1972]).
*598 The parties are in conflict as to whether plaintiff maintained the secrecy of the lists. Plaintiff asserts that she did, with the understanding that she alone possessed the password for her computer (complaint 1i 36; Viuker affidavit If 26; Shmueli affidavit 1Í1T 37, 39, 42, 51, 54). Defendants assert that she did not, citing excerpts from her deposition testimony describing the crowded nature of Corcoran’s offices, thereby suggesting that secrecy was impossible (defendants’ mem at 2-3; Rowe affidavit, exhibit B [Shmueli deposition transcript], at 110-113).[7] Efforts to maintain secrecy are relevant to trade secret analysis; however, issues of fact involving such efforts are matters for trial (Ashland Mgt., supra). The parties’ conflicting accounts give rise to such an issue of fact.
Accordingly, the motion is denied as to the fourth cause of action.
Interference with Prospective Business Relations (Fifth Cause of Action)
To establish a claim for interference with prospective business relations, plaintiff must show that defendants exercised such interference by perpetrating independent torts, distinct of alleged wrongful competition, with the sole purpose of harming her (Newport Serv. & Leasing, Inc. v Meadowbrook Distrib. Corp., 18 AD3d 454 [2d Dept 2005]; Snyder v Sony Music Entertainment, 252 AD2d 294, 299-300 [1st Dept 1999]). Plaintiff has not made that showing. Nor has she demonstrated that defendants prevented her from entering into any specified contract (Best Payphones v Empire State Payphone Assn., 272 AD2d 139 [1st Dept 2000]).
Accordingly, it is ordered that defendants’ motion for summary judgment is granted as to the fifth cause of action, and the same is hereby dismissed; and it is further ordered that the clerk shall enter judgment accordingly; and it is further ordered that the motion is otherwise denied; and it is further ordered that plaintiff shall serve an amended complaint amending the second cause of action, as hereinabove directed.

. As characterized by the Second Department, the common-law tort of conversion applies only to “specific chattel” (9310 Third Ave. Assoc. v Schaffer Food Serv. Co., 210 AD2d 207, 208 [2d Dept 1994]).

. The basic essence of conversion is civil theft, capable of resulting in a transfer of the stolen property to a third party, and, thus, giving rise to a compensatory remedy for its value, if not retrievable for the owner (see, Hartford Acc. & Indem. Co. v Walston & Co., 21 NY2d 219 [1967], adhered to on rearg 22 NY2d 672 [1968]).

. “Where there is conversion of a document in which intangible rights are merged, the damages include the value of such rights” (Restatement [Second] of Torts § 242 [1]).

. To clarify, this court today does not go so far as to adopt the Ninth Circuit’s application of the tort of conversion to such intangibles as domain names, as that issue is not before the court. Rather, the Ninth Circuit’s reasoning is helpful in reaching the less dramatic conclusion required in this case; to wit, that electronically written “documents” should not be treated with less dignity of ownership ’ for conversion purposes, than ink written “documents.” The medium of recordation—whether ancient or modern— *594 should not be deemed germane to a court’s substantive application of the salutary principles underlying the tort of conversion. Otherwise, the remedial benefits of this remedy to victims of civil theft would soon become lost, due to what might be perceived as the law’s inability to keep up with science. Therefore, assuming plaintiffs ability to prove the elements of conversion, she should not be precluded from the remedy of replevin of her client/investor list if it be retrievable, or the remedy of compensation for its value if it not be, merely because it is stored on a computer rather than on a piece of paper.

. The within holdings are not intended to extend to cases involving employees (as opposed to independent contractors), as it is generally held that an employee’s work product is proprietary to the employer (Pullman Group v Prudential Ins. Co. of Am., 288 AD2d 2 [1st Dept 2001], lv denied 98 NY2d 602 [2002]).

. Plaintiff attests that she refused Hall’s demand (Shmueli affidavit If 20).

. Defendants’ reliance on plaintiff’s deposition testimony appears to ignore her attestation that, despite the close office quarters, all personnel within Corcoran’s offices harbored, and practiced, a commonly understood, mutual, expectation of privacy (see, Rowe affidavit, exhibit B [Shmueli deposition transcript], at 111; accord, Shmueli affidavit 11 52).